IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| TELEBRANDS CORPORATION,<br><br>          Plaintiff,<br><br>     v.<br><br>BHSD TRADING LLC,<br><br>          Defendant. | Case No. 1:23-cv-00225-MAD-CFH |

**DECLARATION OF CHRISTOPHER H. ANDERSON**

Submitted July 26, 2024

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

I, Christopher H. Anderson, state and declare the following:

1.      I am a Senior Manager at the firm of Stout Risius Ross, LLC ("Stout"), a multi-disciplinary firm specializing in corporate finance, valuation, financial disputes, and investigations.  My curriculum vitae, which is attached to this declaration, describes my professional experience.

2.      I have been retained by Telebrands Corporation ("Telebrands") in the above-referenced matter to assist the Court in determining the appropriate amount of damages that may be recoverable by Telebrands as a result of BHSD Trading LLC's ("BHSD")[1] infringement of U.S. Patent No. 9,581,272 entitled "Garden Hose," issued February 28, 2017 ("the '272 patent") and U.S. Patent No. 10,174,870 entitled "Expandable and Contractable Garden Hose," issued January 8, 2019 ("the '870 patent") (collectively, "the patents-in-suit").[2]

3.      I understand that on April 27, 2023, default was entered against Defendant, BHSD, for failure to appear in this action.[3]  On May 30, 2023, Telebrands filed a Motion for Default Judgment requesting the following:

> (1) a finding of default judgment as to liability for patent infringement under 35 U.S.C. § 271(a), (2) a permanent injunction order prohibiting Defendant from selling the Accused Products, (3) an order permitting Telebrands to conduct

---

[1] I understand that Isaac Perlmutter is the sole member of BHSD, The Garden Hose LLC ("Garden Hose"), and YMMP LLC ("YMMP"), and that each of these companies made sales of expandable hose products accused of infringing Telebrands' patents in this matter (*see* Declaration of Isaac Perlmutter, dated May 1, 2024).  For purposes of this declaration, I may refer to BHSD, Garden Hose, and YMMP collectively as "BHSD."

[2] Complaint for Patent Infringement, dated February 17, 2023 (Dkt. 1); U.S. Patent No. 9,581,272, issued February 28, 2017; U.S. Patent No. 10,174,870, issued January 8, 2019.

[3] Clerk's Certificate of Action Taken on Plaintiff(s) Request for Entry of Default, dated April 27, 2023 (Dkt. 13).

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

limited discovery to determine the amount of Telebrands' damages to be submitted to the Court thereafter, (4) an award of monetary damages, including all assets in Defendant's online marketplace accounts, including those operated by PayPal, Meta, Shopify, and Amazon, to Telebrands, (5) an award of treble damages, reasonable attorneys' fees, costs and expenses, and pre-judgment and post-judgment interest to be determined following the completion of Telebrands' limited damages discovery or at the completion of the case, and (6) any additional relief the Court deems just and proper.[4]

4.       On October 10, 2023, the Court issued a Memorandum-Decision and Order in response to Telebrands' Motion for Default Judgment stating that Plaintiff is entitled to "default judgment as to liability" and "permanent injunctive relief," and "that additional evidence is necessary before the Court may award damages, fees, and costs."[5]  The Memorandum-Decision and Order further states that, in order to facilitate the production of additional evidence, "the Court grants Plaintiff's request to obtain discovery from Defendant to determine the amount of its damages."[6]  As of the date of this declaration, I have been provided a financial document relating to BHSD's infringing sales made through Amazon.com and joeysgarden.com, which Mr. Isaac Perlmutter, BHSD's representative and sole member, represented "reflect[s] all of BHSD's, Garden Hose's and YMMP's sales of expandable hoses."[7]

---

[4] Plaintiff Telebrands Corporation's Notice of Motion for Default Judgment, dated May 30, 2023 (Dkt. 17).

[5] Memorandum-Decision and Order, dated October 10, 2023 (Dkt. 19), pp. 5-6.

[6] Memorandum-Decision and Order, dated October 10, 2023 (Dkt. 19), p. 6.

[7] BHSD Sales Data (P&L Report (second report).xlsx); Declaration of Isaac Perlmutter, dated May 1, 2024.

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

5.    From February 28, 2017 through December 31, 2023, BHSD sold ███████

infringing expandable garden hoses on Amazon.com and joeysgarden.com, earning total gross

revenues of approximately ████████ on such infringing sales, as detailed in the chart below:[8]



6.    I understand that, because the Court has entered an Entry of Default against BHSD

under Rule 55(a) on Telebrands' claims for patent infringement, Telebrands (as sole owner of the

patents-in-suit) is entitled to recover "damages adequate to compensate for the infringement, but

in no event less than a reasonable royalty for the use made of the invention by the infringer."[9]

While I understand that damages under 35 U.S.C. § 284 are typically measured as either the

patent owner's lost profits or as a reasonable royalty,[10] and that a patent owner need only prove

---

[8] BHSD Sales Data (P&L Report (second report).xlsx).  I understand that "████████████" relates to sales made through Garden Hose and "████████████" relates to sales made through YMMP, while "████████" relates to the amount of "gross sales that is showing on the [A]mazon reports but were for different items, not expandable hoses."  I further understand that 2017 amounts are limited to only activity made on or after February 28, 2017, and 2023-2024 amounts are limited to sales made on or before December 31, 2023 (*see* Email from Adam Kurland to Michael Zinna Re: Perlmutter, dated May 9, 2024; The Garden Hose LLC 2017 Amazon Account Activity Summary; The Garden Hose LLC 2023 Amazon Account Activity Summary; YMMP LLC 2023 Amazon Account Activity Summary).  Additionally, I note that BHSD reported sales made through joeysgarden.com of ████████.  It is not clear in what time period these sales occurred (either 2023 or 2024).  For purposes of this analysis, I have assumed these sales occurred in 2023.  I further note that this assumption has no impact on resulting royalty damages, however, assuming these sales occurred later is conservative when performing a calculation of pre-judgment interest.

[9] 35 U.S.C. § 284.

[10] *See, e.g., Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 899 F.2d 1171, 1173 (Fed. Cir. 1990).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                Page 3 of 28

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

lost profits to a reasonable degree of probability,[11] for purposes of my analysis I have only presented a claim for reasonable royalties.

7.      I understand that Courts have accepted reasonable royalty damages calculations based on the simple formula that damages are equal to 1.) the price of the accused product, multiplied by 2.) the number of accused products sold, multiplied by 3.) the respective royalty rate.[12]  Stated differently, reasonable royalty damages may be calculated using the following simple formula:

Damages = (Price of Accused Product) * (Number of Accused Products Sold) * (Royalty Rate).

8.      Royalty damages may also be calculated as a per-unit royalty multiplied by the number of accused products sold.  Further, I understand that "[a] reasonable royalty can be calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer."[13]  In my determination of a reasonable royalty amount, I have considered a number of factors, including those identified in the *Georgia-Pacific v. U.S. Plywood Corp.* case.[14]  I am aware that the *Georgia-Pacific* factor analysis is often consulted when determining a reasonable royalty in patent infringement matters. One of the most important of the fifteen *Georgia-Pacific* factors is the last factor, a hypothetical

---

[11] *See, e.g., Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326-27 (Fed. Cir. 1987).

[12] *See e.g., Levitation Arts, Inc. v. Plox, Inc.,* No. CV 17-1476-MN, 2020 WL 2730905, at *3 (D. Del. May 26, 2020), *report and recommendation adopted*, No. CV 17-1476 (MN), 2020 WL 3103894 (D. Del. June 11, 2020).

[13] *Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010).

[14] *See Georgia-Pacific v. United States Plywood Corp.*, 318 F. Supp. 1116,1120 (S.D.N.Y. 1970), *modified and aff'd* 446 F. 2d 295 (2d Cir. 1971).

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

negotiation pictured to take place between a willing licensee and willing licensor as of the date of first infringement.

9.      Although the date of the hypothetical negotiation may predate certain of the events and facts cited below, I understand that in considering and analyzing the *Georgia-Pacific* factors, I am allowed to use the "book-of-wisdom" to consider events and facts that happened subsequent to the date of the hypothetical negotiation.[15]   I understand, however, that it is in the Court's discretion whether to consider information from after the date of the hypothetical negotiation.[16]

10.      I describe my assessment of each of the *Georgia-Pacific* factors, and my conclusion as to the resulting royalty from the hypothetical negotiation, below.

---

[15] *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333 (Fed. Cir. 2009) (citing *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568 (Fed. Cir. 1988), overruled on other grounds by *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1343-44 (Fed. Cir. 2004) (en banc)).  In explaining the book-of-wisdom, the *Fromson* court stated:

Determining a fair and reasonable royalty is often, as it was here, a difficult judicial chore, seeming often to involve more the talents of a conjurer than those of a judge.  Lacking adequate evidence of an established royalty, the court was left with the judge-created methodology described as "hypothetical negotiations between willing licensor and willing licensee."

. . .

The methodology encompasses fantasy and flexibility; fantasy because it requires what warring parties would have agreed to as willing negotiators; flexibility because it speaks of negotiations of the time infringement began, *yet permits and often requires a court to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators.*  853 F.2d at 1574-75 (emphasis added).

[16] *See, e.g., ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1332-33 (Fed. Cir. 2012) (finding no abuse of discretion where the plaintiff's expert was permitted to rely upon an agreement that post-dated the hypothetical negotiation by two years but the alleged infringer's expert was not permitted to rely upon an agreement that post-dated the hypothetical negotiation by four years).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

**Factor #1:      The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.**

11.      I am aware of four agreements entered into by Telebrands containing rights to the patents-in-suit.  I describe these agreements below.

**Telebrands /** █████████████████████████

12.      Effective ████████, Telebrands  and ████████████████

████████████ ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████ ███████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████ ████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[17] Settlement and License Agreement between Telebrands Corp. and ████████████████████████

[18] Settlement and License Agreement between Telebrands Corp. and ████████████████████████
pp. 1-2 and Exhibit A.

[19] Settlement and License Agreement between Telebrands Corp. and ████████████████████████,
pp. 2-3.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

███████████████████████████████████████████████ █

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████ █ ███████████████████████████████

████████████████████████████████████████████████

████████████████ █ ███████████████████████████████

████████████████ █ ███████████████████████████████

████████████████████████████████████████ █

**Telebrands / ████████████████████████**

13.   Effective ████████████, Telebrands  and  ██████████████████

██████████ █ ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[20] Settlement and License Agreement between Telebrands Corp. and ██████████████████████████,
p. 3.

[21] Settlement and License Agreement between Telebrands Corp. and ██████████████████████████,
p. 3.

[22] Settlement and License Agreement between Telebrands Corp. and ██████████████████████████,
Exhibit B.  Calculated as ██████████████████.

[23] Settlement and License Agreement between Telebrands Corp. and ██████████████████████████
Exhibit B.

[24] Settlement and License Agreement between Telebrands Corp. and ██████████████████████████,
Exhibit C.  Calculated as █████████████████.

[25] Settlement Agreement between Telebrands Corp. and ████████████████████████████.

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

███████████████████████████████  ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████  ██████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████

**Telebrands  /**  ████████████████████████████████████████

███████████████████████████

14.   Effective ████████████, Telebrands entered into a ████████████

████████████████████████████  ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[26] Settlement Agreement between Telebrands Corp. and ████████████████████████████, p. 1 and Exhibit A.

[27] Settlement Agreement between Telebrands Corp. and ████████████████████████, p. 2.

[28] Settlement Agreement between Telebrands Corp. and ████████████████████████, p. 2.

[29] Settlement Agreement between Telebrands Corp. and ████████████████████████, Exhibit B; Email from ████████████ to Michael Zinna with Attachments, dated September 22, 2023.

[30] Settlement Agreement between Telebrands Corp., ████████████████████████████████████████.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    Page 8 of 28

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

██████████████████    ████████████████████████████████████████

███████████████████████████████████████████████████    ██

████████████████████████████████████████████████████████████████

██████████████████████████████████████    ███    ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████    █

████████████████████████████████████████████████████████████████

████████████████████████████████████    █

15.    ████████████████████████████████████████████

██████████████████████████████████████    █    ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████    █    ██████████████████████████████████████████████

---

[31] Settlement Agreement between Telebrands Corp., ██████████████████████████████
██████████, p. 1 and Exhibit A.

[32] Settlement Agreement between Telebrands Corp., ██████████████████████████████
██████████, pp. 1-2.

[33] Settlement Agreement between Telebrands Corp., ██████████████████████████████
██████████, p. 3.

[34] Settlement Agreement between Telebrands Corp., ██████████████████████████████
██████████, p. 2 and Exhibit B.

[35] Calculated as ██████████████████████.

[36] License Agreement between Telebrands Corp. and ██████████████████████████████.

[37] License Agreement between Telebrands Corp. and ████████████████████████████, p. 2.

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

██████████████████████████████████████████████████

████████████████████████████ ██████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████ ████████████████████

██████████████████████████ ██████████████████████

██████████████████████████████████████████████████

████████████████████████████████

**Telebrands Agreements Conclusion**

16.    As discussed above, Telebrands' agreements with ██████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████ ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[38] License Agreement between Telebrands Corp. and ████████████████████, p. 2.

[39] License Agreement between Telebrands Corp. and ████████████████████, p. 1.

[40] License Agreement between Telebrands Corp. and ███████████████████ pp. 1 and 3.

[41] License Agreement between Telebrands Corp. and ████████████████████, p. 3.

[42] Settlement and License Agreement between Telebrands Corp. and ██████████████████████, p. 3.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

████████████████████████  ██████████████████████████████████

███████████████████████████████████ ██████████████████████████

█████████████████████████████████████

17.   ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ ████████████████████████████████

██████████████████████████ ██████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ ████████████████████████████████

████████████████████████████████████████████████████████████

---

[43] Settlement and License Agreement between Telebrands Corp. and ████████████████████████,
p. 3.

[44] Settlement Agreement between Telebrands Corp. and ████████████████████, p. 2.

[45] Settlement Agreement between Telebrands Corp. and ██████████████████████, Exhibit B;
Email from ██████████ to Michael Zinna with Attachments, dated September 22, 2023.

[46] Calculated as ██████████

[47] Settlement and License Agreement between Telebrands Corp. and ████████████████████████,
Exhibit B and Exhibit C.  Calculated as ████████████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    Page 11 of 28

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

███████████████████████████████ ███████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

18.   ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ ████████████████

████████████████████████████████████████████████████

████████████████████████████████   As such, when considering all of

Telebrands' existing agreements containing rights to the patents-in-suit, this *Georgia-Pacific*

Factor indicates that a ████ royalty on the sales price of expandable garden hoses is an established

and reasonable rate for a license to the patents-in-suit.

---

[48] Calculated as ████████████████████████████

[49] Calculated as ██████████████████████.

[50] License Agreement between Telebrands Corp. and ████████████████████████, p. 1.

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

**Factor #2:    The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.**

19.    I am not aware of any licenses entered into by BHSD for rights to comparable technology, or otherwise.  As such, this *Georgia-Pacific* Factor has no impact on the result of the hypothetical negotiation.

**Factor #3:    The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.**

20.    The hypothetical negotiation would have resulted in a non-exclusive license to the patents-in-suit for the infringing products made, used, offered for sale, sold, or imported into the U.S.  Ordinarily, all other things being equal, a non-exclusive license will carry a lower royalty than an exclusive license.  However, with respect to the ███ royalty rate indicated by Telebrands' existing agreements, this *Georgia-Pacific* Factor has no impact as each of these agreements also contained non-exclusive rights.

**Factor #4:    The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.**

21.    I understand that Telebrands takes lengths to protect its patent monopoly on expandable garden hoses and to prevent other competitors from entering the market by offering infringing products.  As discussed above, Telebrands' existing agreements each contain special

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    Page 13 of 28

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

conditions which are designed to preserve the monopoly created by its patent rights during the life of its patents.  Under the terms of its agreement with ███████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████ ████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████ ██████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████  Ordinarily, a licensor that does not regularly license its technology may charge a higher royalty rate than one which routinely grants licenses to others.  However, as I understand that the Court has already entered a permanent injunction against BHSD's infringing sales,[54] this *Georgia-Pacific* Factor has no impact on the ████ royalty rate indicated by Telebrands' existing agreements.

---

[51] Settlement and License Agreement between Telebrands Corp. and ████████████████████████████, p. 2.

[52] Settlement and License Agreement between Telebrands Corp. and ████████████████████████████, p. 2.

[53] Settlement Agreement between Telebrands Corp. and ████████████████████████, p. 2.

[54] Memorandum-Decision and Order, dated October 10, 2023 (Dkt. 19), p. 6.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                Page 14 of 28

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

**Factor #5:     The commercial relationship between the licensor and the licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.**

22.     I understand that, prior to the Court entering a permanent injunction against BHSD's infringing sales, Telebrands and BHSD were competitors in the expandable garden hose market.  As discussed above, ███████████████████ also competed in the expandable garden hose market prior to their agreements with Telebrands.  Ordinarily, all other things being equal, a licensor that is licensing its technology to a licensee that is not a competitor will generally charge a lower royalty than it would to a licensee who is a direct competitor.  However, as each of Telebrands' existing agreements were entered into with former competitors, this *Georgia-Pacific* Factor has no impact on the ███ royalty rate indicated by such agreements.

**Factor #6:     The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.**

23.     This *Georgia-Pacific* Factor considers the extent to which sales of the infringing products are used to generate additional sales of other products.  I am aware of evidence to suggest that BHSD's sales of infringing expandable garden hose products may have also generated additional revenues through such convoyed sales.  For example, according to a web archive of joeysgarden.com from March 31, 2023, BHSD offered for sale a "Wall Mount Hose

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

Holder" that could be used for storage with the infringing expandable garden hose products.[55]

Further, BHSD's financial data produced in this matter indicates additional gross sales from

"other items" of over ███████ between February 28, 2017 and December 31, 2023 (though

no further detail was provided to distinguish which "other items" generated such sales).[56]

Ordinarily, a license in which the patented technology drives the sale of other products or services

would typically command a higher royalty rate than a license for technology that does not.

However, as described above, Telebrands' Settlement Agreement with ███████████

█████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████ As such, █████████████████

█████████████████████████, this *Georgia-Pacific* Factor has no impact.

**Factor #7:     The duration of the patent and the term of the license.**

24.     I understand that the hypothetical negotiation for a license to the patents-in-suit

would have taken place at or around the date of first infringement.  The '272 patent issued on

February 28, 2017 and the '870 patent issued on January 8, 2019.[58]  I understand based on

BHSD's financial data that it was already offering infringing expandable garden hose products

---

[55] https://web.archive.org/web/20230331164300/https://www.joeysgarden.com/.

[56] BHSD Sales Data (P&L Report (second report).xlsx).

[57] Settlement Agreement between Telebrands Corp., ████████████████████████
████████, p. 2 and Exhibit B.

[58] U.S. Patent No. 9,581,272, issued February 28, 2017; U.S. Patent No. 10,174,870, issued January 8, 2019.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    Page 16 of 28

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

at the time that the '272 patent issued.[59]  As such, I have assumed the hypothetical negotiation

would have taken place between Telebrands and BHSD no later than February 28, 2017, the issue

date of the '272 patent.  As discussed above, I understand that the Court granted Telebrands a

permanent injunction against BHSD's infringing sales on October 10, 2023.[60]  As such, the

license would have extended through such date.  Ordinarily, all other things being equal, a license

to a patent with a longer life remaining before expiration might expect to command a higher

royalty than a license for a patent with a shorter life remaining.  However, the effort and expense

of implementing a design-around may be more likely to be considered the longer the term of the

license, neutralizing the effect of patent life, if such design around options exist.  When compared

to Telebrands' existing agreements and the ▮ royalty rate indicated by such agreements, this

*Georgia-Pacific* Factor has no impact as each of those agreements were limited to a combination

of past sales and remaining inventory.

**Factor #8:    The established profitability of the product made under the patent; its**
**commercial success; and its current popularity.**

25.    As discussed above, from February 28, 2017 through December 31, 2023, BHSD

sold ▮ infringing expandable garden hoses on Amazon.com and joeysgarden.com, earning

total gross revenues of approximately ▮ on such infringing sales.[61]  While BHSD has

produced profit information, the financial data contains a number of issues that make it difficult

---

[59] BHSD Sales Data (P&L Report (second report).xlsx); The Garden Hose LLC 2017 Amazon Account Activity
Summary.

[60] Memorandum-Decision and Order, dated October 10, 2023 (Dkt. 19), p. 6.

[61] BHSD Sales Data (P&L Report (second report).xlsx).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    Page 17 of 28

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

to discern meaningful profit metrics related solely to the infringing expandable garden hose products.  For example, according to email correspondence from BHSD's counsel on May 9, 2024, BHSD represented that "[g]ross sales only represent the 2 amazon accounts," while "the units and the net sales" both include sales made from joeysgarden.com.[62]  Further, the net sales data is only represented in the aggregate across Garden Hose, YMMP, and joeysgarden.com, and does not separate net sales made on infringing expandable garden hose products versus the gross revenue earned from "other items."[63]  The same is true with the expense categories, such as Landed COGS (Cost of Goods Sold), Storage, and Logistics.[64]  Setting these issues aside, BHSD's profits have drastically varied from year to year, both nominally and at a percent margin level.  Dividing BHSD's calculated profit by the sum of its gross sales across Garden Hose and YMMP results in profit margins ranging from ███████████.[65]  Despite having highly variable levels of profit, BHSD has admitted that this is largely due to its own business decisions in an effort to "stay relevant" in the market.[66]  According to BHSD, "[i]n the past the industry was flooded with expandable hoses so the only way to stay relevant was by operating on very low margins."[67]  However, now that Telebrands has succeeded in protecting its patent monopoly in the expandable garden hose market, the market has become less competitive which allows

---

[62] Email from ███████████ to Michael Zinna Re: Perlmutter, dated May 9, 2024; BHSD Sales Data (P&L Report (second report).xlsx).

[63] BHSD Sales Data (P&L Report (second report).xlsx).

[64] BHSD Sales Data (P&L Report (second report).xlsx).

[65] BHSD Sales Data (P&L Report (second report).xlsx).

[66] Email from ███████████ to Michael Zinna Re: Perlmutter, dated May 9, 2024.

[67] Email from ███████████ to Michael Zinna Re: Perlmutter, dated May 9, 2024.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    Page 18 of 28

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

BHSD "to operate on a much higher profit margin."[68]  With this balance in mind, the hypothetical

negotiators would understand that BHSD's profit margins would have very little impact on

Telebrands' willingness to license its patented technology, and BHSD's willingness to pay.  As

such, this *Georgia-Pacific* Factor has no impact on the ▮▮ rate indicated by Telebrands' existing

agreements.

**Factor #9:    The utility and advantages of the patented property over the old modes or
devices, if any, that had been used for working out similar results.**

**and**

**Factor #10:   The nature of the patented invention; the character of the commercial
embodiment of it as owned and produced by the licensor; and the benefits to those who have
used the invention.**

26.    According to the Abstract of the '272 patent, the invention relates to:

[a] flexible hose having an inner tube member made from a thermoplastic

elastomeric material and an outer tube member made from a fabric like material.

The inner tube member is secured to the outer tube member only at an inlet coupler

and an outlet coupler.  The inlet coupler is constructed to secure to a water supply

provided from a conventional household water spigot.   The outlet coupler

incorporates a flow restrictor allowing the inner tube member to equalize in

---

[68] Email from Adam Kurland to Michael Zinna Re: Perlmutter, dated May 9, 2024.

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

pressure with pressurized water received from the water supply. Pressurized water expands the elongated inner tube member longitudinally along a length of the inner tube member and laterally across a width of the inner tube member thereby substantially increasing the length of the hose to an expanded condition wherein the hose contracts to a substantially decreased length when there is a decrease in pressurized water.[69]

27.     According to the Abstract of the '870 patent:

[a] hose which automatically expands longitudinally and automatically expands laterally upon the application of a pressurized liquid is disclosed. The hose can automatically expand longitudinally up to six times its unexpanded or contracted length. Upon release of the pressurized liquid within the hose, the hose will automatically contract to a contracted condition. The hose includes an inner tube made from an elastic material and an outer tube made from a non-elastic material. The inner tube is positioned concentrically within the outer tube in both a contracted condition and an expanded condition. The outer tube is secured to the inner tube only at a first end of the inner and outer tubes and at a second end of the inner and outer tubes. The outer tube moves laterally and longitudinally with respect to the inner tube when the tubes are transitioning between a contracted condition and an expanded condition.[70]

---

[69] U.S. Patent No. 9,581,272, issued February 28, 2017, Abstract.

[70] U.S. Patent No. 10,174,870, issued January 8, 2019, Abstract.

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

     28.     According to the patents-in-suit, the invention sought to eliminate issues that existed with prior art garden hoses, such as difficulty with storage, kinking, weight and bulkiness, and difficulty with unraveling.[71]  As such, the patents-in-suit identify that "what is needed in the art is a hose that can be expanded and extended to a practical length during use, and automatically returned to the reduced length when not in use.  Also, a hose which is relatively light in weight and will not kink when taken from storage and filled with liquid for use."[72]  Thus, the patents-in-suit disclose an expandable garden hose which, "[i]n the contracted state[,] . . . is relatively easy to store and easy to handle because of its relative short length and its relative light weight[,] and in the extended state the hose can be located to where ever the liquid is required."[73]  According to Telebrands' website, its own patented expandable garden hose, the Pocket Hose® hose, includes these benefits over prior art garden hoses described above.  For example, Telebrands states that the Pocket Hose® hose "[e]xpands to over twice its size," is "[l]ightweight and portable," and "[w]on't kink, tear or crease."[74]  Further, customer reviews for the Pocket Hose® hose on Amazon.com indicate that consumers purchase these products for similar reasons.  For example, one customer described the Pocket Hose® hose as "lightweight, durable, [] easy to maneuver, and it never kinks or twists."[75]

---

[71] *See, e.g.,* U.S. Patent No. 10,174,870, issued January 8, 2019, Background of the Invention.

[72] *See, e.g.,* U.S. Patent No. 10,174,870, issued January 8, 2019, Background of the Invention.

[73] *See, e.g.,* U.S. Patent No. 10,174,870, issued January 8, 2019, Field of the Invention.

[74] http://www.telebrands.com/pocket_hose/.

[75] https://www.amazon.com/Multiple-Patterns-Expandable-Lead-Free-Lightweight/dp/B09X2B2FLX/ref=sr_1_4_sspa?crid=2WJGN78NM9UBN&dib=eyJ2IjoiMSJ9.K1KcWIlYsZbaYtf-kyqwvOBTeJdSoiraT3GIJwUF06L6NZvBq3FZzJnTHmbFlO7Ej-y7YJZ4uMrgO0Ft9tyVAWriZEjQ4QqGmE90wYY4_yWDwYCYQOkanGWNY3dVBXyE8Yu6QJ5XdyYsF6kgx

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

29.     Ordinarily, all other things being equal, a license for a patent that provides substantial benefits and that represents a substantial improvement over the prior art can expect to command a higher royalty than a license for a patent that does not provide such benefits. However, with respect to Telebrands' existing agreements and the ██ royalty rate indicated by such agreements, this *Georgia-Pacific* Factor has no impact as those agreements also contained rights to the patents-in-suit.

**Factor #11:    The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.**

30.     As discussed above, between February 28, 2017 and December 31, 2023, BHSD has sold ██ infringing expandable garden hoses and earned total gross revenues of approximately ██ on such infringing sales.  Ordinarily, all other things being equal, a license that covers patented technology that is extensively used by the infringer, and the higher the value of that use, the higher the royalty compared to a license that does not cover such patented technology.  However, with respect to the ██ royalty rate reflected in Telebrands' existing agreements, this *Georgia-Pacific* Factor has no impact as each of these agreements contained rights to the patents-in-suit and covered sales of infringing expandable garden hose products, akin to the hypothetical negotiation between BHSD and Telebrands.

---

QHMdWflE6zG0uj6QC9gescLsdxXbJpJFncLB10lKBybic3wq_tLev_MeZT-Pxu-Hb-jRBrLzvjPJeFz3gAEYOlgTPCqDZ6OBI8NQMeMwKjQMRbVvAa83PQiIh300FoG5KQk8FVytFU6mxsu11Dc0FxumK4.EV47k3BbT3v0NqZDLjsNSxPEROYGUNG2pyGc4kuScEU&dib_tag=se&keywords=pocket+hose&qid=1721661665&sprefix=pocket+hos%2Caps%2C147&sr=8-4-spons&sp_csd=d2lkZ2V0TmFtZT1zcF9hdGY&psc=1.

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

**Factor #12:   The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.**

31.     I am not aware of any information relating to a customary split of profit in this industry.  Royalty rates depend on the facts and circumstances surrounding the product and related companies.  Therefore, this *Georgia-Pacific* Factor is neutral.

**Factor #13:   The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.**

32.     This *Georgia-Pacific* Factor, which essentially addresses the concept of apportionment, can be important in assessing the value of patented technology as distinguished from other attributes of the product or the company that sells it.  In considering Telebrands' existing agreements, the hypothetical negotiators would recognize that the rates contained in the agreements account for any value contributed that is unrelated to the patented technology.  I am aware that the Federal Circuit has explained that "when a sufficiently comparable license is used as the basis for determining the appropriate royalty, further apportionment may not necessarily be required."[76]  Further, the Federal Circuit stated, "[b]uilt-in apportionment effectively assumes that the negotiators of a comparable license settled on a royalty rate and royalty base combination

---

[76] *See, e.g., Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020) (citing *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353 (Fed. Cir. 2020)).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    Page 23 of 28

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

embodying the value of the asserted patent."[77]   As such, I understand that no further apportionment is necessary to account for the value contributed by the patents-in-suit as compared to any non-patented elements.

**Factor #14:   The opinion testimony of qualified experts.**

33.     This report reflects my opinions in this matter.

**Factor #15:   The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.**

34.     Given all the information discussed above, I believe the hypothetical negotiators would have settled on an appropriate royalty of ███ applied to BHSD's gross sales of infringing expandable garden hose products.  Such a royalty is reasonable in light of the key metrics and considerations described in detail above and is consistent with the established royalty rate that Telebrands has consistently sought on past and future sales of licensed products.  Further, applying such a royalty to BHSD's gross sales of infringing products is proper as I understand

---

[77] *Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020).

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

that BHSD's gross sales most closely tie to the sales price that is charged to the customer.  For example, the gross sales figures contained in BHSD's financial records tie out to the Total Income for each period as represented in BHSD's Amazon Account Summaries, which is primarily composed of product sales net of credits, refunds and rebates.[78]  As discussed above, from February 28, 2017 through December 31, 2023, BHSD sold ████ infringing expandable garden hoses on Amazon.com and joeysgarden.com and earned total gross revenues of approximately ████ on such infringing sales.[79]  Applying a ████ royalty to these sales results in total reasonable royalties of $2,924,157.12, as summarized in the chart below:[80]



**<u>Pre-judgment Interest</u>**

35.      In addition to the determination of reasonable royalty damages described above, I have also been asked by counsel to calculate pre-judgment interest on such damages to date.  I understand that under the New York Civil Practice Law & Rules (CVP), "[i]nterest shall be at

---

[78] *See, e.g.*, The Garden Hose LLC 2017 Amazon Account Activity Summary; The Garden Hose LLC 2023 Amazon Account Activity Summary; YMMP LLC 2023 Amazon Account Activity Summary; BHSD Sales Data (P&L Report (second report).xlsx).

[79] BHSD Sales Data (P&L Report (second report).xlsx).

[80] BHSD Sales Data (P&L Report (second report).xlsx).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    Page 25 of 28

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

the rate of nine per centum per annum."[81]  I further understand that such pre-judgment interest

shall be calculable based on the annual sales of infringing products, rather than the date of first

infringement.[82]  After applying a mid-year convention and simple interest at an annual rate of

9%, BHSD's total pre-judgment interest on reasonable royalty damages through July 26, 2024

(the date of this declaration) amounts to $709,550.08, and total damages amount to

$3,633,707.20, as summarized in the chart below.[83]

| | Feb. 28 - Dec. 31, 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | Total |
|---|---|---|---|---|---|---|---|---|
| **Calculation of Pre-judgment Interest on Total Reasonable Royalties as of July 26, 2024** | | | | | | | | |
| Total Royalties | $ 105,096.53 | $ 206,893.63 | $ 43,778.43 | $ 93,691.57 | $ 484,659.52 | $ 1,675,236.19 | $ 314,801.25 | $ 2,924,157.12 |
| Period Start Date | 02/28/2017 | 01/01/2018 | 01/01/2019 | 01/01/2020 | 01/01/2021 | 01/01/2022 | 01/01/2023 | |
| Period End Date | 12/31/2017 | 12/31/2018 | 12/31/2019 | 12/31/2020 | 12/31/2021 | 12/31/2022 | 12/31/2023 | |
| Midpoint of Period | 07/31/2017 | 07/02/2018 | 07/02/2019 | 07/02/2020 | 07/02/2021 | 07/02/2022 | 07/02/2023 | |
| Days to Midpoint | 2,552 | 2,216 | 1,851 | 1,485 | 1,120 | 755 | 390 | |
| Years to Midpoint | 6.9918 | 6.0712 | 5.0712 | 4.0685 | 3.0685 | 2.0685 | 1.0685 | |
| Interest Rate | 9.00% | 9.00% | 9.00% | 9.00% | 9.00% | 9.00% | 9.00% | |
| **Interest Factor** | 0.6293 | 0.5464 | 0.4564 | 0.3662 | 0.2762 | 0.1862 | 0.0962 | |
| **Pre-judgment Interest** | $ 66,137.25 | $ 113,046.68 | $ 19,980.48 | $ 34,309.85 | $ 133,862.96 | $ 311,928.98 | $ 30,283.88 | $ 709,550.08 |
| **Total Damages** | $ 171,233.78 | $ 319,940.31 | $ 63,758.91 | $ 128,001.42 | $ 618,522.48 | $ 1,987,165.17 | $ 345,085.13 | $ 3,633,707.20 |

36.    Additionally, I have also been asked by counsel to calculate total damages and

pre-judgment interest assuming the Court finds that BHSD has willfully infringed Telebrands'

patents and awards trebled damages.  As discussed above, applying a ▇▇ royalty to these

BHSD's infringing product sales revenue results in total reasonable royalties of $2,924,157.12.

---

[81] N.Y. C.P.L.R. § 5004 (https://www.nysenate.gov/legislation/laws/CVP/5004).

[82] *See, e.g., PPC Broadband, Inc. v. Corning Optical Communs. RF, LLC*, 11-cv-761, 2016 U.S. Dist. LEXIS 152450, *31–*32 (S.D.N.Y. Nov. 3, 2016).

[83] See above for my determination of Total Royalties.  "Days to Midpoint" calculated as July 26, 2024 minus "Midpoint of Period"; "Years to Midpoint" calculated as "Days to Midpoint" divided by 365; "Interest Factor" calculated as "Interest Rate" multiplied by "Years to Midpoint"; "Pre-judgment Interest" calculated as "Interest Factor" multiplied by "Total Royalties"; "Total Damages" calculated as "Pre-judgment Interest" plus "Total Royalties."

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    Page 26 of 28

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

Trebling these damages results in total trebled reasonable royalties of $8,772,471.36.[84]  After applying a mid-year convention and simple interest at an annual rate of 9%, BHSD's total pre-judgment interest on trebled reasonable royalty damages through July 26, 2024 (the date of this declaration) amounts to $2,128,650.23, and total trebled damages amount to $10,901,121.59, as summarized in the chart below.[85]

| Calculation of Pre-judgment Interest on Trebled Reasonable Royalties as of July 26, 2024 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Feb. 28 - Dec. 31, 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | Total |
| Trebled Royalties | $ 315,289.59 | $ 620,680.89 | $ 131,335.29 | $ 281,074.71 | $ 1,453,978.56 | $ 5,025,708.57 | $ 944,403.75 | $ 8,772,471.36 |
| Period Start Date | 02/28/2017 | 01/01/2018 | 01/01/2019 | 01/01/2020 | 01/01/2021 | 01/01/2022 | 01/01/2023 | |
| Period End Date | 12/31/2017 | 12/31/2018 | 12/31/2019 | 12/31/2020 | 12/31/2021 | 12/31/2022 | 12/31/2023 | |
| Midpoint of Period | 07/31/2017 | 07/02/2018 | 07/02/2019 | 07/02/2020 | 07/02/2021 | 07/02/2022 | 07/02/2023 | |
| Days to Midpoint | 2,552 | 2,216 | 1,851 | 1,485 | 1,120 | 755 | 390 | |
| Years to Midpoint | 6.9918 | 6.0712 | 5.0712 | 4.0685 | 3.0685 | 2.0685 | 1.0685 | |
| Interest Rate | 9.00% | 9.00% | 9.00% | 9.00% | 9.00% | 9.00% | 9.00% | |
| Interest Factor | 0.6293 | 0.5464 | 0.4564 | 0.3662 | 0.2762 | 0.1862 | 0.0962 | |
| Pre-judgment Interest | $ 198,411.74 | $ 339,140.04 | $ 59,941.43 | $ 102,929.56 | $ 401,588.88 | $ 935,786.94 | $ 90,851.64 | $ 2,128,650.23 |
| Total Damages | $ 513,701.33 | $ 959,820.93 | $ 191,276.72 | $ 384,004.27 | $ 1,855,567.44 | $ 5,961,495.51 | $ 1,035,255.39 | $10,901,121.59 |

37.    Should the Court ultimately enter an award of damages against BHSD at a date later than July 26, 2024, pre-judgment interest will continue to accrue at a rate of approximately 0.025% per day.[86]  Applying this rate to my calculation of total reasonable royalties results in additional pre-judgment interest in the amount of $721.03 per day for each day following the date of this declaration until the Court enters an award of damages.[87]  Applying this rate to my calculation of trebled reasonable royalties results in additional pre-judgment interest in the

---

[84] Calculated as $2,924,157.12 * 3 = $8,772,471.36.

[85] See above for my determination of Total Royalties.  "Trebled Royalties" calculated as Total Royalties multiplied by 3; "Days to Midpoint" calculated as July 26, 2024 minus "Midpoint of Period"; "Years to Midpoint" calculated as "Days to Midpoint" divided by 365; "Interest Factor" calculated as "Interest Rate" multiplied by "Years to Midpoint"; "Pre-judgment Interest" calculated as "Interest Factor" multiplied by "Total Royalties"; "Total Damages" calculated as "Pre-judgment Interest" plus "Total Royalties."

[86] Calculated as 9.00% / 365 = 0.0247%.

[87] Calculated as (9.00% / 365) * $2,924,157.12 = $721.03.

United States District Court for the Northern District of New York
Case No. 1:23-cv-00225-MAD-CFH

Telebrands Corporation v. BHSD Trading LLC

amount of $2,163.08 per day for each day following the date of this declaration until the Court enters an award of damages.[88]

     38.     I note that these calculations are limited to sales data produced by BHSD as of the date of this declaration.  Should additional sales data be produced from BHSD or any Third Party Retailers, I will be prepared to update my calculations at that time if the Court so desires.

     39.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed at Dallas, Texas on this 26th day of July, 2024.



_____
Christopher H. Anderson
Senior Manager, Stout Risius Ross, LLC

---

[88] Calculated as (9.00% / 365) * $8,772,471.36 = $2,163.08.

# Christopher Anderson
Senior Manager





Christopher Anderson is a Senior Manager in the Disputes, Compliance, & Investigations group. He has provided dispute resolution services for cases involving patent infringement, trademark infringement, trade secret misappropriation, false advertising, breach of contract, breach of fiduciary duty, and unfair competition, among others. Through these matters, he has assisted in preparation for discovery, depositions, expert reports, mediations, arbitrations, and trial.

Christopher has conducted complex financial analyses involving lost sales, lost profits, incremental profits, fixed and variable costs, reasonable royalties, business valuations, and unjust enrichment for both plaintiffs and defendants.

His case experience encompasses a broad array of industries, including cellular, construction, consumer products, financial securities, medical products, sales, and supply chain.

Dallas, TX USA
**Office:** +1.214.459.3616
canderson@stout.com

### Education

B.S., Finance and Operations Management, Indiana University, Kelley School of Business

### Practice Areas

Intellectual Property Disputes

# Christopher Anderson
Senior Manager



## Employment

| | |
|---|---|
| October 2023 – Present | Stout Risius Ross, LLC – Senior Manager |
| August 2022 – September 2023 | Stout Risius Ross, LLC – Manager |
| January 2021 – August 2022 | Davis & Hosfield Consulting, LLC – Manager |
| January 2019 – December 2020 | Davis & Hosfield Consulting, LLC – Senior Consultant |
| August 2016 – December 2018 | Davis & Hosfield Consulting, LLC – Consultant |

## Litigation Consulting Experience

Provided dispute resolution services for cases involving patent infringement, trade secret misappropriation, false advertising, breach of contract, and breach of fiduciary duty, among others.

Conducted complex financial analyses involving lost wages, lost sales, lost profits, incremental profits, fixed and variable costs, reasonable royalties, business valuations, royalty audits, and unjust enrichment for both plaintiffs and defendants.

Assisted counsel in various stages of litigation including analyzing financial issues, creating financial damages models, and developing demonstrative exhibits for mediation, arbitration, and trial.

Case experience encompasses an array of industries including, but not limited to, consumer products, construction, electronics, financial securities, healthcare, pharmaceuticals, software, and telecommunications.

## Consulting Experience

| Lawsuit | Court | Law Firm | Type | Industry/Product |
|---|---|---|---|---|
| Genentech, Inc. v. Biogen MA, Inc. Case No. 4:23-cv-00909-YGR | U.S. District Court for the Northern District of California | Williams & Connolly LLP | Breach of Contract | Pharmaceuticals |
| ACQIS LLC v. Sony Interactive Entertainment Inc. and Sony Interactive Entertainment LLC Case No. 1:23-cv-00822-ADA | U.S. District Court for the Western District of Texas, Austin Division | Wilmer Cutler Pickering Hale and Dorr LLP | Patent Infringement | Video Game Consoles |
| Qorvo, Inc. v. Akoustis Technologies, Inc. and Akoustis, Inc. Case No. 1:21-cv-01417-JPM | U.S. District Court for the District of Delaware | Sheppard Mullin | Trade Secret Misappropriation Patent Infringement Unfair Competition | BAW Filters |

## Christopher Anderson
Senior Manager



| Lawsuit | Court | Law Firm | Type | Industry/Product |
|---------|-------|----------|------|------------------|
| EcoFactor, Inc. v. ecobee, Inc. Case No. 6:22-cv-00033-ADA | U.S. District Court for the Western District of Texas, Waco Division | Venable LLP | Patent Infringement | Smart Thermostats |
| ecobee, Inc. v. EcoFactor, Inc. Case No. 1:21-cv-00323-MN | U.S. District Court for the District of Delaware | Venable LLP | Patent Infringement | Smart Thermostats |
| EcoFactor, Inc. v. ecobee, Inc. Case No. 6:21-cv-00428-ADA (consolidated) | U.S. District Court for the Western District of Texas, Waco Division | Venable LLP | Patent Infringement | Smart Thermostats |
| Vampire Family Brands, LLC v. RiGO Trading, S.A.; Haribo of America, Inc.; and Does 1-20 Case No. 2:21-cv-005560-DSF-JC | U.S. District Court for the Central District of California, Western Division | Leydig, Voit & Mayer, Ltd. | Trademark Infringement | Confectionary Products |
| Cirba Inc. (d/b/a Densify) and Cirba IP, Inc. v. VMware, Inc. Case No. 1:19-cv-007422-MN (consolidated) | U.S. District Court for the District of Delaware | Morrison & Foerster | Patent Infringement | Software |
| F45 Training Pty Ltd. and F45 Training Inc. v. Body Fit Training USA Inc. and BFT Franchise Holdings LLC Case No. 1:20-cv-01194-WCB | U.S. District Court for the District of Delaware | Willkie Farr & Gallagher LLP | Patent Infringement | Group Fitness |
| United Services Automobile Association v. PNC Bank N.A. Case No. 2:21-cv-00246-JRG | U.S. District Court for the Eastern District of Texas, Marshall Division | Munger, Tolles & Olson LLP | Patent Infringement | Mobile Banking |
| Deere & Company v. AGCO Corporation and Precision Planting LLC Case No. 1:18-cv-00827-CFC (Consolidated) | U.S. District Court for the District of Delaware | Wilmer Cutler Pickering Hale and Dorr LLP | Patent Infringement | Agriculture |
| Stone Brewing Co., LLC v. MillerCoors LLC Case No. 3:18-cv-00331-BEN-LL | U.S. District Court for the Southern District of California | Wilmer Cutler Pickering Hale and Dorr LLP | Trademark Infringement | Beer |
| Michael J. Lombardo and Melissa A. Lombardo v. CitiMortgage, Inc. Case No. 18-10299-PBS (Consolidated) | U.S. District Court for the District of Massachusetts | Mayer Brown LLP | Breach of Contract | Banking |
| Ford Motor Company and Ford Global Technologies, LLC v. InterMotive, Inc. and Gregory E. Schafer Case No. 4:17-cv-11584-TGB-APP | U.S. District Court for the Eastern District of Michigan | Brooks Kushman P.C. | Trademark Infringement & Breach of Contract | Automotive Manufacturing |

## Christopher Anderson
Senior Manager



| Lawsuit | Court | Law Firm | Type | Industry/Product |
|---------|-------|----------|------|------------------|
| IPA Technologies Inc. v. Amazon.com, Inc. and Amazon Digital Services, LLC Case No. 20-842-CFC | U.S. District Court for the District of Delaware | Kirkland & Ellis LLP | Copyright Infringement | Software |
| Anthony Scott Levandowski v. Uber Technologies, Inc. Case No. 20-30242 (HLB) | U.S. Bankruptcy Court for the Northern District of California, San Francisco Division | Jenner & Block LLP | Breach of Contract | Vehicle Automation |
| 10x Genomics, Inc. v. Celsee, Inc. Case No. 1:19-cv-00862-CFC-SRF | U.S. District Court for the District of Delaware | Durie Tangri, LLP | Patent Infringement | Single-cell Genomics |
| Orthopaedic Hospital v. DJO Global Inc. and DJO Finance LLC Case No. 3:19-cv-00970-JLS-AHG | U.S. District Court for the Southern District of California | Quinn Emanuel Urquhart & Sullivan, LLP | Patent Infringement | Healthcare |
| Sol IP v. AT&T Mobility LLC Case No. 2:18-cv-00526-RWS-RSP; Sol IP v. Sprint Corporation, et al. Case No. 2:18-cv-00527-RWS-RSP; Sol IP v. Verizon Communication Inc., et al. Case No. 2:18-cv-00528-RWS-RSP | U.S. District Court for the Eastern District of Texas, Marshal Division | McKool Smith PC; Quinn Emanuel Urquhart & Sullivan, LLP; Gibson, Dunn & Crutcher LLP; McGuireWoods LLP; Alston & Bird LLP | Patent Infringement | Telecommunications |
| Intellectual Ventures I, LLC and Intellectual Ventures II, LLC v. NetApp, Inc. Civil Action Nos. 1:16-cv-10868-PBS; 1:16-cv-10860-PBS | U.S. District Court for the District of Massachusetts | Gibson, Dunn & Crutcher LLP | Patent Infringement | Software |
| CAO Lighting, Inc. v. Light Efficient Design Case No.: 1:17-cv-07359 | United States District Court for the Northern District of Illinois, Eastern Division | Barnes & Thornburg LLP | Patent Infringement | LED Lighting |
| Vir2us, Inc. v. Sophos Inc. and Invincea, Inc. Case No. 2:19-cv-00018-HCM-DEM | U.S. District Court for the Eastern District of Virginia, Norfolk Division | Goodwin Procter LLP | Breach of Contract | Software |
| Fractus, S.A. v. CommScope Technologies LLC, et al. Civil Action Nos. 2:18-cv-00135-JRG; 2:18-cv-00137-JRG; 2:18-cv-00138-JRG | U.S. District Court for the Eastern District of Texas, Marshall Division | Carlson Caspers Vandenburgh & Lindquist, PA | Patent Infringement | Telecommunications |

## Christopher Anderson
Senior Manager



| Lawsuit | Court | Law Firm | Type | Industry/Product |
|---|---|---|---|---|
| Novartis Vaccines and Diagnostics, Inc., Novartis Pharma AG, and Grifols Worldwide Operations Limited v. Regeneron Pharmaceuticals, Inc. Case No. 1:18-cv-02434 | United States District Court for the Southern District of New York, White Plains Division | Rakoczy Molino Mazzochi Siwik LLP | Patent Infringement | Pharmaceuticals |
| Intellectual Ventures II LLC v. T-Mobile USA, Inc., et al. Civil Action Nos. 2:17-cv-661-JRG; 2:17-cv-662-JRG (Consolidated) | U.S. District Court for the Eastern District of Texas, Marshall Division | Kwun Bhansali Lazarus LLP | Patent Infringement | Telecommunications |
| Route1 Inc. v. AirWatch LLC Case No. 1:17-cv-00331-RGA | U.S. District Court for the District of Delaware | Morrison & Foerster LLP | Patent Infringement | Software |
| Digital Ally, Inc. v. Taser International, Inc. Case No. 2:16-cv-02032 | U.S. District Court for the District of Kansas | Erise IP, P.A. | Patent Infringement | Wireless Body-Worn Cameras |
| SS&C Technologies, Inc., v. Bradley Rossa and Clearwater Analytics, LLC Case No. 2015-CH-15891 | Circuit Court of Cook County, Illinois County Department, Chancery Division | Latham & Watkins | Trade Secret | Software |
| Laveranues Coles, et al. v. Chuhak & Tecson, P.C., Gary Stern, Jeanne Kerkstra, David Shiner, and Lindsey Markus Case No. 18 L 1095 | Circuit Court of Cook County, Illinois County Department, Law Division | Konicek & Dillon, P.C. | General Commercial Dispute | Financial Services |
| The Renco Group, Inc. v. MacAndrews AMG Holdings LLC; MacAndrews & Forbes Holdings Inc., and AM General Holdings LLC Case No. 7668-VCN | The Chancery of the State of Delaware | Paul, Weiss, Rifkind, Wharton & Garrison LLP | Breach of Contract | Automotive Manufacturing |
| Princeton Digital Image Corporation v. Ubisoft Entertainment SA and Ubisoft, Inc. Case No. 1:13-cv-00335-LPS-CJB | U.S. District Court for the District of Delaware | Erise IP P.A. | Patent Infringement | Video Games |
| ACQIS LLC v. EMC Corporation Case No. 1:14-cv-13560-ADB | U.S. District Court for the District of Massachusetts | Gibson, Dunn & Crutcher LLP | Patent Infringement | Computer Interconnect Technology |
| Bruce and Jane Levy v. Peter Levy Case No. 2016-CH-06454 | Circuit Court of Cook County, Illinois County Department, Chancery Division | Harrison Law LLC | Business Valuation | Supply Chain and Logistics |

**Christopher Anderson**
Senior Manager



| Lawsuit | Court | Law Firm | Type | Industry/Product |
|---|---|---|---|---|
| Navico Inc. and Navico Holding AS v. Garmin International, Inc. and Garmin USA, Inc. Case No. 4:14-cv-00303-JED-TLW | U.S. District Court for the Eastern District of Texas, Marshall Division | Paul, Weiss, Rifkind, Wharton & Garrison LLP | Patent Infringement & False Advertising | Consumer Products |
| Amdocs (Israel) Limited v. Openet Telecom, Inc. and Openet Telecom LTD. Case No: 1:10-CV-910 (LMB/JFA) | U.S. District Court for the Eastern District of Virginia, Alexandria Division | Wilmer Cutler Pickering Hale and Dorr LLP | Patent Infringement | Software |
| National Products Inc. v. Belkin International, Inc. Case No. 2:16-cv-00402-TSZ | U.S. District Court for the Western District of Washington at Seattle | Fenwick & West LLP | Patent Infringement | Consumer Products |
| Toy'n Around, Inc. v. VTech Electronics North America, LLC Case No: 0:16-cv-01413 | United States District Court for the District of Minnesota | Steptoe & Johnson LLP | Breach of Contract & Unjust Enrichment | Consumer Products |
| Oyster Optics, LLC v. Coriant (USA) Inc., Coriant North America, LLC, and Coriant Operations, Inc. Case No. 2:16-cv-01302-JRG | U.S. District Court for the Eastern District of Texas, Marshall Division | Banner & Witcoff, Ltd. | Patent Infringement | Fiber Optic Networks |
| Huawei Technologies Co. Ltd. v. T-Mobile US, Inc., et al. Case Nos. 2:16-cv-00052-JRG-RSP; 2:16-cv-00055-JRG-RSP; 2:16-cv-00056-JRG-RSP; 2:16-cv-00057-JRG-RSP | U.S. District Court for the Eastern District of Texas, Marshall Division | Wilmer Cutler Pickering Hale and Dorr LLP | Patent Infringement | Telecommunications |
| Andrea Honigsblum v. Next Door & Window Company, Inc., et al. | Circuit Court of Cook County, Illinois County Department, Law Division | Schain Banks Kenny & Schwartz LTD | Lost Earnings | Healthcare |
| Howard Samuels, as Assignee/Trustee of the TAG Creditor's Trust f/k/a The American Group of Constructors, Inc. v. BP Products North America, Inc. Case No. 01-15-0003-9125 | American Arbitration Association | Greensfelder, Hemker & Gale, P.C. | Breach of Contract and Business Valuation | Construction |