UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**TELEBRANDS CORPORATION,**

         **Plaintiff,**

 vs.                 1:23-CV-00225
                       (MAD/CFH)
**BHSD TRADING LLC,**

         **Defendant.**

---

**APPEARANCES:**           **OF COUNSEL:**

**KELLY DRYE & WARREN LLP**    **MICHAEL ZINNA, ESQ.**
One Jefferson Road - 2nd Floor     **VINCENT FERRARO, ESQ.**
Parsippany, New Jersey 07054
Attorneys for Plaintiff

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

  On February 17, 2023, Plaintiff Telebrands Corporation ("Plaintiff") commenced this patent infringement action against Defendant BHSD Trading LLC ("Defendant" or "BHSD Trading"), alleging violations "of the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*." Dkt. No. 1 at ¶ 1. On October 10, 2023, the Court granted Plaintiff's motion for default judgment, as to liability only. *See* Dkt. No. 19 at 7. Additionally, the Court awarded Plaintiff an immediate and permanent injunction against Defendant. *See id.* at 7-8. The parties were directed to engage in limited discovery regarding damages. *See id.* at 5-8. Now pending is Plaintiff's motion for

damages, prejudgment interest, postjudgment interest, and costs. *See* Dkt. No. 34.[1] For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

## II. BACKGROUND

The Court presumes the parties' familiarity with the factual background of the liability portion of this matter, which is recited in the Memorandum-Decision and Order dated October 10, 2023. *See* Dkt. No. 19 at 1-3.

Defendant has provided Plaintiff with damages discovery, including Plaintiff's purported sales records for the "Joeys [sic] Garden Expandable Garden Hose products" ("Infringing Products") that infringe U.S. Patent Nos. 9,581,272 ("the '272 Patent"), issued February 28, 2017, and 10,174,870 ("the '870 Patent"), issued January 8, 2019 (collectively, "the Asserted Patents"). Dkt. No. 34-1 at1, 6-9; *see* Dkt. No. 1 at ¶¶ 11-13. The sales records, provided by Defendant, reflect that Defendant generated $14,620,785.62 in revenue from sales of 614,470 units of the Infringing Products during the relevant damages period, which began on February 28, 2017, the date the '272 Patent was issued. *See id.* at 9 n.3, 13. Plaintiff requests that the Court apply a 20% royalty rate to Defendant's sales, which mirrors the rate that Plaintiff has applied to licensed sales of the Infringing Products in its agreements with other vendors. *See id*. at 10, 12-13. A 20% royalty rate applied to Defendant's sales results in a compensatory damages amount of $2,924,157.12. *Id.* at 10. Plaintiff requests that the Court treble the compensatory damages figure, resulting in a total of $8,772,471.36, due to Plaintiff's willful infringement. *See id.*

---

[1] Defendant purports to respond to the pending motion via an Affirmation in Opposition, filed by Adam K. Kurland, Esq. *See* Dkt. No. 40. The Court has considered the arguments Defendant raises, but notes that Mr. Kurland has not appeared on the docket as counsel of record.

Plaintiff also requests $2,128,650.23 in prejudgment interest[2] and $1,268.70 in costs.[3] *See id.* In total, Plaintiff requests an award of $10,902,390.29 and that the Court attach a nine percent postjudgment interest rate to such award. *See id.* at 6, 10.

Defendant contends that, although BHSD Trading "owns several trademarks related to certain consumer products and licenses those trademarks to other companies," BHSD Trading "never engaged in any direct infringement over any of Plaintiff's products." Dkt. No. 40 at ¶¶ 8-9. Defendant concedes that Plaintiff has been awarded a default judgment as to liability, but argues that BHSD Trading does not owe Plaintiff any damages because the Infringing Products were sold by other companies; namely, The Garden Hose LLC ("The Garden Hose") and YMMP LLC ("YMMP"). *See id.* at ¶¶ 3-5, 10, 29-32.[4]

### III. DISCUSSION

**A.    Legal Standard**

By failing to answer the complaint or oppose Plaintiff's motion for entry of a default judgment, Defendant is deemed to have admitted the factual allegations in the complaint. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (finding that "a party's default is deemed to constitute a concession of all well pleaded allegations of

---

[2] Plaintiff calculates the prejudgment interest based upon New York's statutory rate of nine percent per year. *See* Dkt. No. 34-1 at 13. The prejudgment interest calculation is also premised upon the date range of February 28, 2017 (the date that the '272 Patent issued), through July 26, 2024 (the date of Plaintiff's pending motion). *See* Dkt. No. 34-1 at 9 n.3. Defendant does not dispute the date range February 28, 2017 through July 26, 2024 for either the calculation of damages nor prejudgment interest. *See, generally*, Dkt. No. 40.

[3] Plaintiff notes that, should the Court decline to treble its compensatory damages, the prejudgment interest would, instead, be $709,550.08. *See* Dkt. No. 34-1 at 10 n.4.

[4] The sole member of The Garden Hose and YMMP is Isaac Perlmutter—the same person that acts as the sole member of BHSD Trading. *See* Dkt. No. 34-12 at ¶ 1.

3

liability"). However, "it is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund and Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158). Thus, once liability has been established "a court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Davis v. XPW Wrestling Inc.*, No. 5:23-CV-675, 2024 WL 3043407, *3 (N.D.N.Y. June 18, 2024) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

"There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence . . . based . . . upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers*, 699 F.3d at 234 (citing Fed. R. Civ. P. 55(b)(2); *Fustok v. ContiCommodity Servs., Inc*, 873 F.2d 38, 40 (2d Cir. 1989)). A district court is permitted to conduct a hearing to determine damages, but "such a hearing is not mandatory." *Id.* (citing Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir.1991)).

**B.    Evidentiary Basis**

Defendant's argument that the sales of the infringing products are not attributable to BHSD Trading, *see* Dkt. No. 40 at ¶¶ 8, 43-50, fails for two reasons.

First, as discussed, Defendant has defaulted in this action and, accordingly, is deemed to have admitted the well pleaded allegations in the complaint. *See Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. The complaint alleges that "BHSD Trading has impermissibly promoted and sold and continues to impermissibly promote and sell infringing expandable hose products

embodying the inventions protected by the Asserted Patents. Specifically, BHSD Trading impermissibly promotes and sells [the Infringing Products] . . . ." Dkt. No. 1 at ¶ 18. Thus, BHSD Trading is deemed to have admitted that it promoted and sold the Infringing Products, in violation of the Asserted Patents.

Second, BHSD Trading provided sales records, in response to Plaintiff's request for "BHSD Trading's Profit and Loss statements from 2017 to present," that it now argues are somehow not attributable to BHSD Trading. Dkt. No. 44-2 at 9; *see* Dkt. No. 44-3 (January 8, 2024 email from Mr. Kurland, purportedly on behalf of BHSD Trading, attaching Profit and Loss statements from 2017 through 2023, "as . . . a response to the [discovery] demands"); Dkt. Nos. 39-3, 39-4 (attachments from the January 8, 2024 email, which include, a spreadsheet that purports to reflect Defendant's sales records during the relevant damages period and summaries of Defendant's sales accounts during same). These sales records, provided directly by Defendant in response to Plaintiff's discovery demands, for the purpose of ascertaining damages, form the basis of Plaintiff's damages calculations. *See* Dkt. No. 34-1 at 9; Declaration of Christopher H. Anderson, Dkt. No. 39-1 at ¶¶ 4-10 (calculating Plaintiff's damages based upon the sales records provided by Defendant).

Although Defendant opposes Plaintiff's motion for damages, Defendant has not moved to vacate the default judgment, nor did it, at any time when liability was at issue, contend that Plaintiffs had sued the wrong entity. The time for Defendant to point to The Garden Hose and YMMP as the correct defendants was before liability was established, not now when the Court is considering only damages. Moreover, Defendant offers no explanation as to why it would have access to—let alone be able to produce—sales records for companies supposedly completely independent from BHSD Trading.

Plaintiff is correct that, if the Court were to credit Defendant's belated argument that its disclosure was of The Garden Hose and YMMP's sales records and not BHSD Trading's, the legal conclusion would inevitably be that Defendant has run afoul of its discovery obligations under Rule 26 of the Federal Rules of Civil Procedure. *See* Dkt. No. 44 at 7. Indeed, a party must supplement or correct its discovery disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). By its failure to take corrective action or inform Plaintiff that its disclosure was incomplete or incorrect, and, instead, using such purported inadequacy as a sword and a shield to oppose the pending motion, Defendant has breached its Rule 26 duty to supplement or correct its discovery disclosure. *See id.*

Simply stated, Defendant is in the wrong, but leaves the Court with the burden to determine how Defendant has erred and what to do about it. The solution the Court is left with is granting an adverse inference.

Rule 37 of the Federal Rules of Civil Procedure permits a court to impose a variety of sanctions for discovery-related abuses, and "affords the court 'broad discretion in fashioning an appropriate sanction.'" *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 195 (E.D.N.Y. 2010) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002)). The range of sanctions available includes—but is not limited to—"orders deeming certain facts established; permitting an adverse inference instruction; striking pleadings; prohibiting the 'disobedient' party from making specific claims or introducing certain matters into evidence; dismissing a claim or the entire action or granting default judgment against the disobedient party; or entering an order of contempt." *Id.* Where, as here, a party alleges that the opposing party failed to disclose

documents it was required to produce, the "moving party bears the burden of showing that its adversary failed timely to disclose information required by Rule 26." *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007). To satisfy this burden, the moving party must demonstrate:

> (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the party's claim or defense such that a reasonable trier of fact could find it would support that claim or defense.

*Id.* (quoting *Residential Funding*, 306 F.3d at 107) (internal quotation marks omitted). Negligence is sufficient to establish the requisite culpable state of mind. *See Doug's Word Clocks.com Pty Ltd. v. Princess Int'l, Inc.*, 323 F.R.D. 167, 173-74 (S.D.N.Y. 2017) (citing *Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 254 (S.D.N.Y. 2012); *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 23 (S.D.N.Y. 2010)).

There is no doubt that Plaintiff has satisfied its burden of demonstrating entitlement to an adverse inference here. *See* Dkt. No. 44 at 8-11. Defendant has control over its own sales records and was under an obligation to produce such evidence. *See* Dkt. No. 19 at 6-8 (ordering the parties to engage in discovery "to determine the amount of [Plaintiff's] damages and submit such evidence to the Court"). Defendant also had an obligation to supplement or correct its disclosure, in the event such disclosure was inadequate. *See* Fed. R. Civ. P. 26(e)(1)(A). Such failure to disclose, supplement, or correct, and the choice to weaponize its own discovery abuses, was at a minimum negligent. *See Doug's Word Clocks.com Pty Ltd.*, 323 F.R.D. at 174 (finding the defendant's failure to produce sales records *willful* in an intellectual property infringement case and granting an adverse inference). And, finally, the evidence of BHSD Trading's sales records is essential to the calculation of Plaintiff's damages and is, therefore, relevant to Plaintiff's claims.

7

For these reasons, the Court finds that an adverse inference against Defendant is warranted and accepts the sales records as reflecting sales attributable to BHSD Trading. *See Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996) ("[I]f actual damages can not be ascertained with precision because the evidence available from the infringer is inadequate, damages may be estimated on the best available evidence, taking cognizance of the reason for the inadequacy of proof and resolving doubt against the infringer . . . . When the calculation of damages is impeded by incomplete records of the infringer, adverse inferences are appropriately drawn").[5]

**C.   Calculation of Compensatory Damages**

Pursuant to 35 U.S.C. § 284, "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and

---

[5] Due to the adverse inference drawn against Defendant, the Court need not reach the parties' disagreement regarding whether a declaration executed by Mr. Perlmutter, and submitted by Plaintiff in support of its motion, should be stricken. *See* Dkt. No. 40 at ¶¶ 22-28; Dkt. No. 44 at 11-13. Defendant appears to be invoking Rule 408 of the Federal Rules of Evidence, which limits the admissibility of settlement negotiations. *See* Dkt. No. 40 at ¶ 25. Plaintiff appears to have used the declaration as evidence that Mr. Perlmutter attested to the accuracy the sales records produced by BHSD Trading. *See* Dkt. No. 46 at 12-13. No such evidence is necessary, now, as the sales records at issue have been held to be attributable to BHSD Trading. However, because Defendant has attempted to deny the accuracy of its own discovery production, the declaration is admissible, pursuant to Rule 408(b), for the purpose of estopping Defendant from contesting the accuracy of the sales records it produced. *See PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 115 (2d Cir. 2008) ("To construe Rule 408 as barring [estoppel] evidence would substantially limit the opportunity of defendants to rely on the defense of estoppel, even when well substantiated") (citation omitted). Therefore, ironically, although Rule 408 may have properly been invoked by Defendant to bar the admission of Mr. Perlmutter's declaration because it was furnished during settlement discussions, Defendant has inadvertently made the declaration admissible due to its attempt to disclaim the BHSD Trading sales records, which triggers the Rule 408(b) estoppel exception. Additionally, as Defendant has made Mr. Perlmutter's declaration admissible, the Court denies Defendant's motion to strike the declaration of Plaintiff's expert, Mr. Anderson. *See* Dkt. No. 40 at 6 n.1.

costs as fixed by the court." Furthermore, pursuant to 35 U.S.C. § 285, the court may award reasonable attorneys' fees to the prevailing party "in exceptional cases." "Whether a case is 'exceptional' is a determination of fact, and the awarding of attorneys' fees in such cases is left to the court's discretion." *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F. Supp. 751, 834 (E.D.N.Y. 1995) *affirmed by* 96 F.3d 1409 (Fed. Cir. 1996).[6]

"The [reasonable] royalty may be based upon an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling United States, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012) (citation omitted) (alterations in original). Evidence supporting an "established royalty" for a license under the same patent for a similar product may be sufficient to establish a reasonable royalty rate. *Levitation Arts, Inc. v. Plox, Inc.*, No. 17-CV-1476, 2020 WL 2730905, *3 (D. Del. May 26, 2020), *report and recommendation adopted*, 2020 WL 3103894 (D. Del. June 11, 2020). Indeed, "[c]ourts and commentators alike have recognized that the royalties received by the patentee for the licensing of the patents in suit is the 'most influential factor' in determining a reasonable royalty." *Mobil Oil Corp. v. Amoco Chemicals Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994). The formula of "damages = (price of Accused Product) × (# of Accused Products sold) × (royalty rate)" has been used by courts to calculate damages, when there is an established reasonable royalty rate. *See, e.g.*, *Levitation Arts, Inc.*, 2020 WL 2730905, at *3.

---

[6] Although Plaintiff claims that it is entitled to an award of attorneys' fees in its motion for default judgement and its pending motion for damages, *see* Dkt. No. 17-1 at 8, 11, 16; Dkt. 34-1 at 9, no motion for attorneys' fees has been made and the Court need not address the issue at this juncture, *see* Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and related nontaxable expenses must be made by motion . . .").

9

The Court finds that Plaintiff's request for $2,924,157.12 in compensatory damages is reasonable. Plaintiff has submitted evidence of a reasonable royalty rate of 20%, which is supported by "four licensing and/or settlement agreements with other entities regarding the same Asserted Patents—each requiring payment to Telebrands in the amount of 20% of the total revenue received by the licensee for the sale of the licensee's infringing products." Dkt. No. 34-1 at 12 (citing Dkt. No. 39-1 at ¶¶ 11-18). Defendant does not contest Plaintiff's proposed royalty rate of 20% of BHSD Trading's total gross revenue from sales of the Infringing Products. *See generally*, Dkt. No. 40.[7] For these reasons, the Court deems a reasonable royalty rate of 20% established, based upon Plaintiff's submission of four agreements applying the same royalty rate regarding the same Asserted Patents.[8]

---

[7] Generally, when a party fails to address a legal argument in its opposition papers, such argument is deemed waived. *See Laufer Grp. Int'l, Ltd. v. Sonder Distribution USA, LLC*, No. 1:22-CV-03313, 2023 WL 6317949, *9 (S.D.N.Y. Sept. 28, 2023) (finding that argument not raised in opposition papers waived) (citing *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004); *Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020)); *Car-Freshner Co. v. Air Freshners, Inc.*, No. 7:10-CV-1491, 2012 WL 3294948, at *5 (N.D.N.Y. Aug. 10, 2012) ("In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a 'modest' burden").

[8] Plaintiffs have also presented an analysis performed by its damages expert, Mr. Anderson, applying the "*Georgia-Pacific* factors" (a method widely utilized by courts to determine reasonable royalty rates in patent infringement cases), who concludes that the parties would have agreed to a 20% reasonable royalty rate. *See* Dkt. No. 34-1 at 13; Dkt. No. 39-1 at ¶¶ 11-34; *see also Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971) (establishing the "*Georgia-Pacific* factors"). Indeed, the statute governing damages in patent infringement cases requires the district court to award damages "'in an amount no less than a reasonable royalty,' even if the plaintiff has no evidence to proffer"; in such a case, the district courts consider the *Georgia-Pacific* factors and award such reasonable royalties as the record evidence will support. *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365 (Fed. Cir. 2015) (citing 35 U.S.C. § 284) (quotation omitted). Defendant does not oppose such analysis

(continued...)

Plaintiff has also presented evidence that shows BHSD Trading sold 614,470 units of the Infringing Products at an average sales price of $23.79[9] per unit, from February 28, 2017 through December 31, 2023 on Amazon.com and joeysgarden.com. *See* Dkt. No. 34-1 at 13; Dkt. No. 34-1 at ¶¶ 5, 34. This data is also derived directly from sales records and data provided by BHSD Trading. *See* Dkt. No. 39-2 at ¶¶ 9-10 (explaining that the data contained in Exhibits 1 and 2 attached thereto are true and correct copies of the sales records provided by Defendant); Dkt. No. 39-3 (Exhibit 1); Dkt. No. 39-4 (Exhibit 2).

Applying a 20% royalty rate to Defendant's revenue of $14,620,785.62 results in a reasonable royalty of $2,924,157.12,[10] which represents Plaintiff's compensatory damages stemming from Defendant's infringement.

**D.   Treble Damages**

Plaintiff requests that the Court treble the compensatory damages because Defendant's infringement was "willful." Dkt. No. 34-1 at 13-16. The Court, in its discretion, declines to award enhanced damages.

When damages are assessed for patent infringement, "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. As the Supreme Court has held, "Section 284 gives district courts the discretion to award enhanced damages against those guilty of patent infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 110 (2016). However, these enhanced damages "are not to be meted out in a typical infringement case, but are

---

[8](...continued)
either.

[9] Plaintiff uses the average sales price of $23.76, *see* Dkt. No. 34-1 at 13, however the Court's own calculations show that $14,620,785.62 divided by 614,470 is approximately $23.79.

[10] $2,924,157.12 = ($14,620,785.62) × (20%)

11

instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement. behavior." *Id.* at 104. "The sort of conduct warranting enhanced damages has been variously described in [Supreme Court] cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* (citation omitted).

"Post-*Halo*, courts considering default judgment in patent infringement cases have declined to award enhanced damages when there were no allegations suggesting egregious conduct—conduct beyond that of a typical patent infringement case." *Summit Indus. Supply, LLC v. Triple Crown Consulting, LLC*, No. 1:20-CV-385, 2021 WL 3033481, *4 (S.D. Ohio July 19, 2021) (collecting cases). Typical conduct, such as failing to adequately respond to a cease and desist letter has been found to be inadequate to warrant enhanced damages. *See id.* And egregious conduct, found to be worthy of treble damages by federal courts, includes deliberate and direct violation of a court ordered permanent injunction over the course of a decade. *See Agio Int'l Co., Ltd. v. Zhejiang Longda Forge Co.*, No. 1:15-CV-00192, 2023 WL 2339890, *5 (W.D.N.C. Feb. 28, 2023).

Here, Plaintiff has alleged that Defendant's conduct was "willful." *See* Dkt. No. 1 at ¶¶ 36, 54. And, because default judgment results in Defendant's concession of all well-pleaded allegations of liability, *see Greyhound Exhibitgroup*, 973 F.2d at 158, Defendant's conduct was, as a matter of law, "willful," *see* Dkt. No. 1 at ¶ 36. However, simply because Defendant's conduct was willful, does not automatically entitle Plaintiff to treble damages—whether to grant enhanced damages is solely within the Court's discretion. *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021) ("Although willfulness is a component of enhancement, 'an award of enhanced damages does not necessarily flow from a willfulness finding.' . . . Discretion

remains with the district court to determine whether the conduct is sufficiently egregious to warrant enhanced damages") (quotation and internal citations omitted).

The Court finds that Plaintiff has not alleged conduct that is "sufficiently egregious to warrant enhanced damages." *Id.* (citation omitted). Although Plaintiff alleges that BHSD Trading acted with knowledge that it was infringing on the Asserted Patents, no other conduct beyond infringement is alleged. *See* Dkt. No. 1 at ¶¶ 25-28, 36, 43-46, 54. Plaintiff does not even allege that it sent Defendant a cease and desist that was ignored (conduct that has been found to fall short of egregious), *see Summit Indus. Supply, LLC*, 2021 WL 3033481, at *4, let alone conduct such as direct violation of a court ordered injunction (conduct which has been found to be egregious), *see Agio Int'l Co., Ltd.*, 2023 WL 2339890, at *5. Thus, there are no allegations of conduct that rise above that of a typical patent infringement case. For these reasons, despite the established willful nature of Defendant's conduct, the Court, in its discretion, declines to award enhanced damages.

**E.      Prejudgment and Postjudgment Interest**

Plaintiff is entitled to prejudgment and postjudgment interest on its damages award, as well as costs. *See* 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement . . . together with *interest and costs* as fixed by the court") (emphasis added).

Plaintiff seeks prejudgment interest on its damages award at the New York statutory rate of nine percent per year, running from the first date of eligible recovery, the date that the '272 Patent was issued. *See* Dkt. No. 34-1 at 18 (citing *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, No. 5:11-CV-761, 2016 WL 6537977, *10 (N.D.N.Y. Nov. 3, 2016); N.Y.

C.P.L.R. § 5004). Defendant offers no argument as to whether New York's nine percent interest rate should or should not be applied. *See* Dkt. No. 40.

"[P]rejudgment interest should be awarded under [Section] 284 absent some justification for withholding such an award." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983). The federal statute does not fix an interest rate, and courts have the discretion to set it accordingly. *See Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986). Federal courts have used state statutory interest rates to calculate prejudgment interest. *See Oiness v. Walgreen Co.*, 88 F.3d 1025, 1028 (Fed. Cir. 1996) (applying Colorado's eight percent state statutory rate); *PPC Broadband, Inc.*, 2016 WL 6537977 at *10 (applying New York's nine percent statutory rate).

The Court, exercising its discretion, awards Plaintiff prejudgment interest at the New York State statutory rate of nine percent per annum. *See* N.Y. C.P.L.R. § 5004(a). As of the date of Plaintiff's motion for damages, prejudgment interest totaled $709,550.08, representing the interest accrued from February 28, 2017 through July 26, 2024. *See* Dkt. No. 34-1 at 18 n.10 (citing Dkt. No. 39-1 at ¶¶ 35, 37). Interest has continued to accrue at a daily rate of 0.025% ($721.03) per day, which represents nine percent per annum, up to the date judgment made pursuant to this Memorandum-Decision and Order is entered. *See id.*

As for postjugment interest, Plaintiff requests the New York statutory rate of nine percent per annum, pursuant to New York Civil Practice Law and Rules ("CPLR") Sections 5003 and 5004. *See* Dkt. No. 34-1 at 19. However, the Second Circuit has held that postjudgment interest on federal judgments should be awarded pursuant to 28 U.S.C. § 1961. *See Cappiello v. ICD Publications, Inc.*, 720 F.3d 109, 112 (2d Cir. 2013) (upholding district court's rejection of New York's nine percent interest rate). Section 1961 states, in relevant part:

14

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment.

28 U.S.C. § 1961(a). Accordingly, Plaintiff is entitled to postjudgment interest at the rate determined by Section 1961, beginning from the date judgment made pursuant to this Memorandum-Decision and Order is entered. *See Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 490 F. Supp. 3d 593, 637 (E.D.N.Y. 2020) (awarding postjudgment interest pursuant to Section 1961 in patent infringement case); *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 352 (S.D.N.Y. 2019), *modified in part*, No. 18-CV-5427, 2019 WL 7816487 (S.D.N.Y. Dec. 11, 2019), *clarified on denial of reconsideration*, 2020 WL 498200 (S.D.N.Y. Jan. 22, 2020) (same).

**F.    Costs**

Plaintiff argues that it is entitled to costs pursuant to 28 U.S.C. § 1920(a), which, according to Plaintiff, at the time of service of the pending motion, were $1,268.70 and continue to accrue. *See* Dkt. No. 34-1 at 19 n.11. Defendant does not dispute Plaintiff's costs. *See, generally*, Dkt. No. 40. At this time Plaintiff has not filed a bill of costs and the Court, therefore, must deny the motion for costs without prejudice, and grant Plaintiff leave to file a bill of costs and any related accounting in compliance with in 28 U.S.C. § 1920, Rule 54 of the Federal Rules of Civil Procedure, as well as Rule 54.1 of the Local Rules.[11]

---

[11] The Court notes that Plaintiff has not missed any deadlines related to costs, the Court is
(continued...)

G.     **Attachment of Defendant's Accounts**

Plaintiff also seeks "an attachment of any and all money in Defendant's merchant/online marketplace accounts," to satisfy the judgment. Dkt. No. 34-1 at 16-17. Defendant argues that Plaintiff's request for an attachment exceeds the scope of the Court's July 11, 2024, Text Order, which permitted Plaintiff to file a motion for damages, but does not mention non-financial relief. *See* Dkt. No. 40 at ¶¶ 16-21. Additionally, Defendant argues that "a motion for damages should entail seeking a judgment for a specific dollar amount but not anything relating to the enforcement or collection of such a judgment." *Id.* at ¶ 20.

Pursuant to Rule 64 of the Federal Rules of Civil Procedure, New York law governs the Court's authority over judgment enforcement remedies, including attachment. *See* Fed. R. Civ. P. 64(a)-(b); *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 43 F.4th 263, 269 (2d Cir. 2022) ("Attachment is available in federal court 'under the law of the state where the court is located'") (quoting Fed. R. Civ. P. 64). "'Under New York law, an attachment bars any sale, assignment or transfer of, or any interference with the property attached.'" *Id.* (quotation omitted). "Attachment is a 'harsh' remedy, and is construed narrowly in favor of the party against whom the remedy is invoked." *VisionChina Media Inc. v. S'holder Representative Servs., LLC*, 109 A.D.3d 49, 59 (1st Dep't 2013) (quoting *Penoyar v. Kelsey*, 150 N.Y. 77, 80 (1896)) (other citation omitted). "[W]hether to grant the application [for attachment] 'rests within the discretion of the court.'" *Iraq Telecom Ltd.*, 43 F.4th at 270 (quoting *VisionChina Media Inc.*, 109 A.D.3d at 59).

---

[11](...continued)
simply unable to evaluate costs at this juncture. The deadline for Plaintiff to file a bill of costs is thirty-days after judgment made pursuant to this Memorandum-Decision and Order is entered. *See* Local Rule 54.1(a).

Plaintiff's request for attachment is denied for two reasons. First, attachment is a *prejudgment* remedy and Plaintiff has not provided authority that establishes it can obtain such relief *postjudgment*.[12] Indeed, Article 62 of the CPLR provides the procedures for prejudgment attachment, while Article 52 contemplates postjudgment enforcement of money judgments under New York law. *See Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 537-38 (2009). As the New York Court of Appeals has explained, "[A]rticle 52 postjudgment enforcement involves a proceeding against a person—its purpose is to demand that a person convert property to money for payment to a creditor—whereas [A]rticle 62 attachment operates solely on property, keeping it out of a debtor's hands for a time." *Id.* at 538. Plaintiff's request fits neither under Article 62 (because "attachment" here would occur *postjudgment*), nor Article 52 (because Plaintiff is not seeking to have Defendant's property converted to money to satisfy the judgment).

Second, Plaintiff did not request attachment (or any similar judgment-related remedy) in the complaint. When a district court grants default judgment, such judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). As the Second Circuit has noted, "'[i]t would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then,

---

[12] In support of its argument that this Court has the ability to "attach[] the online marketplace accounts of a defaulting defendant," Plaintiff merely cites to an unpublished default judgment order from the Southern District of New York, *see* Dkt. No. 34-1 at 17 (citing Dkt. No. 32, *Centre Way Co. Ltd. v. Guangzhous Wakiki Trading Co., Ltd.*, No. 1:22-cv-05674 (S.D.N.Y. Dec. 1, 2022)), and to three decisions from district courts outside of the Second Circuit, none of which involve attachment under New York law, *see id.* (citing *Huang v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 23-22812-CV, 2024 WL 1513648, *5 (S.D. Fla. Mar. 25, 2024), *report and recommendation adopted*, No. 23-22812-CV, 2024 WL 1513455 (S.D. Fla. Apr. 8, 2024); *Eicher Motors Ltd. v. Individuals Identified on Schedule A Hereto*, No. 22-cv-2458, 2022 WL 3081869, *3 (N.D. Ill. Aug. 3, 2022)); *Pow! Ent., LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified On Schedule A Hereto*, No. 20-cv-1324, 2020 WL 5076715, at *3 (N.D. Ill. Aug. 26, 2020). None of these cases bind this Court.

17

should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.'" *Silge v. Merz*, 510 F.3d 157, 159 (2d Cir. 2007) (quoting 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure, § 2663 (1998)).

For these reasons, the Court declines to grant attachment of Defendant's online marketplace accounts.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for damages, prejudgment interest, postjudgment interest, and costs (Dkt. No. 34) is **GRANTED IN PART and DENIED IN PART** as follows:

> **GRANTED** as to compensatory damages, prejudgment interest, and postjudgment interest;
>
> **DENIED WITHOUT PREJUDICE** as to costs;
>
> **DENIED** as to treble damages; and
>
> **DENIED** as to attachment of Defendant's accounts; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiff's favor in the amount of $2,924,157.12, in addition to: prejudgment interest at the rate if nine percent per annum from February 28, 2017, until the date judgment is entered pursuant to this Memorandum-Decision and Order; postjudgment interest at the rate determined by 28 U.S.C. § 1961; and the Court further

**ORDERS** that, if Plaintiff seeks to recover costs, Plaintiff must file a bill of costs and any related accounting in compliance with 28 U.S.C. § 1920, Rule 54 of the Federal Rules of Civil Procedure, and Local Rule 54.1; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 15, 2025
   Albany, New York

*/s/ Mae A. D'Agostino*
Mae A. D'Agostino
U.S. District Judge