**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**TELEBRANDS CORPORATION,**

                                        **Plaintiff,**

        **vs.**

**BHSD TRADING LLC,**

                                        **Defendant.**

**1:23-CV-225
(MAD/PJE)**

---

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| **KELLY DRYE & WARREN LLP** | **MICHAEL ZINNA, ESQ.** |
| 7 Giralda Farms - Suite 340 | **VINCENT FERRARO, ESQ.** |
| Madison, New Jersey 07940 | |
| Attorneys for Plaintiff | |
| **BLANK ROME LLP** | **CRAIG M. FLANDERS, ESQ** |
| 1271 Avenue of the Americas | **AVERY I. NAGY-NORMYLE, ESQ.** |
| New York, New York 10020 | |
| Attorneys for Defendant | |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On February 17, 2023, Plaintiff Telebrands Corporation ("Plaintiff" or "Telebrands") commenced this patent infringement action against Defendant BHSD Trading LLC ("Defendant" or "BHSD Trading"), alleging violations "of the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*" Dkt. No. 1 at ¶ 1.  Defendant failed to answer the complaint and, on May 30, 2023, Plaintiff requested that the Court enter default.  *See* Dkt. No. 17.  On October 10, 2023, the Court issued a Memorandum-Decision and Order (the "Order") granting Plaintiff's motion for default

1

judgment as to liability only and awarded Plaintiff an immediate and permanent injunction. *See* Dkt. No. 19 at 7-8.

On January 15, 2025, the Court granted in part and denied in part Plaintiff's motion for damages, prejudgment interest, postjudgment interest, and costs (the "damages motion"). *See* Dkt. No. 48. Specifically, the Court granted the damages motion as to compensatory damages, prejudgment interest, and postjudgment interest and denied the damages motion without prejudice as to costs, and with prejudice as to treble damages and attachment of Defendant's accounts. *See id.* at 18. Plaintiff was awarded damages in the amount of $2,924,157.12 as well as prejudgment interest, *see id.* at 11, and, on April 1, 2025, Plaintiff was awarded costs in the amount of $2,685.50, *see* Dkt. No. 52.

Now pending before the Court is Plaintiff's motion for an order to show cause why Defendant, non-party Isaac Perlmutter ("Mr. Perlmutter"), and attorney Adam Kurland ("Attorney Kurland") should not be held in contempt of the Order. *See* Dkt. No. 66. The Court did not issue the proposed order to show cause and the parties were directed by Text Notice of response and reply deadlines. *See* Text Notice, dated Nov. 7, 2025. Defendant opposes Plaintiff's motion for contempt, *see* Dkt. No. 67, and Plaintiff has filed a reply in support of the motion, *see* Dkt. No. 70. For the reasons that follow, Plaintiff's motion for contempt is denied.

## II. BACKGROUND

The Court presumes the parties' familiarity with the factual background of the liability portion of this matter, which is recited in the Order, *see* Dkt. No. 19 at 1-3, as well as the factual background underlying the damages motion, which is recited in this Court's Memorandum-Decision and Order dated January 15, 2025, *see* Dkt. No. 48 at 2-3. The following are the facts relevant to the pending motion.

In the Order, the Court immediately and permanently enjoined and restrained "Defendant, its affiliates, owners, members, business partners, contractual relationships, officers, directors, employees, agents, servants, representatives and attorneys, and any and all persons acting for, with, by, through, under or in active concert with Defendant" from the following:

    a. making, using, advertising, promoting, offering to sell, selling, distributing, importing, or transferring any products, including the Accused Products, that in any way infringe, either literally or under the doctrine of equivalents, the Asserted Patents;

    b. secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any Accused Products or similarly infringing products; (ii) any evidence relating to Defendant's infringing activities; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, Defendant, including, but not limited to, any assets held by or on behalf of Defendant;

    c. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b) herein . . . .

Dkt. No. 19 at 7-8.

As additional evidence was necessary before the Court could award damages, fees, and costs, the Court also granted Plaintiff's request to obtain limited discovery from Defendant to determine the amount of its damages for submission to the Court. *See id.* at 6. The parties engaged in the limited discovery and, thereafter, Plaintiff filed the damages motion, which was granted in part and denied in part as described above. *See* Dkt. Nos. 34, 48.

Defendant did not appeal the judgment in Plaintiff's favor and Plaintiff has since "pursued Defendant's assets in an attempt to satisfy the judgment." Dkt. No. 66 at ¶ 20. In pursuit of satisfaction of the judgment, Plaintiff "docketed the judgment with the Supreme Court of

Rensselaer County in New York, where Defendant is registered, in order to effectuate a lien against Defendant's property in that county[,]" served written discovery on Defendant, and has taken the deposition of Defendant's principal, Mr. Perlmutter. *Id.*

Defendant served a response to Plaintiff's written discovery, which was signed and affirmed by Attorney Kurland. *See id.* at ¶ 22. Defendant's discovery response states that Defendant has no current assets or money to satisfy the judgment and that it "has not transferred, paid, received, or conducted any financial transactions since January 15, 2025, or any other transaction involving an exchange of value." *Id.* at ¶¶ 22-23; *see* Dkt. No. 66-2 at 5.

On September 18, 2025, Plaintiff took Mr. Perlmutter's deposition. *See* Dkt. No. 66 at ¶ 24.[1] Plaintiff contends that during Mr. Perlmutter's deposition, he contradicted Defendant's discovery response and revealed a violation of the Order. *See id.* at ¶¶ 25-28. Specifically, Mr. Perlmutter testified that Defendant sold seven trademarks to "MLZ, LLC" for the purpose of paying Attorney Kurland for his representation in this matter (hereinafter, the "trademarks sale"). *See* Dkt. No. 66-3 at 5-7. The sale of these trademarks was structured so that the profits from the sale ($21,000) were transferred directly to Attorney Kurland, from MLZ, LLC, and were never deposited in accounts owned or controlled by Defendant. *See id.*; Dkt. No. 67 at 8 ("In January 2025, having no funds to pay [Attorney] Kurland, BHSD obtained a third-party valuation of its seven trademarks and sold them to nonparty MLZ Holdings LLC for $21,000.00 . . . . The proceeds of the sale were transferred directly to [Attorney] Kurland to pay for legal fees incurred in defending this action") (internal citations omitted). A sales agreement produced by Defendant and entity information from the New York State Department of State reveal that "MLZ Holdings,

---

[1] A copy of the transcript of Mr. Perlmutter's deposition is attached to Plaintiff's motion at Dkt. No. 66-3. Citations to this document are to the pagination on the heading of each page, generated by CM/ECF, the Court's electronic filing system.

LLC," an entity formed on January 17, 2025, purchased the seven trademarks from Defendant on January 16, 2025.  *See* Dkt. Nos. 70-2, 70-3.[2]

Plaintiff contends that the trademarks sale violated the Order because the Order "clearly and unambiguously" enjoined Defendant, its owners, its representatives, and its attorneys from selling, transferring, or otherwise disposing of any assets held by Defendant.  Dkt. No. 66-4 at 5.  Accordingly, Plaintiff requests that the Court hold Defendant, Mr. Perlmutter, and Attorney Kurland in contempt for violation of the Order and grant the following relief: (1) order Defendant, Mr. Perlmutter, and/or Attorney Kurland "to jointly and severally pay to Telebrands a sum equal to the sale price of the assets sold by Defendant at any time after the date of the Order, within two weeks"; (2) order Defendant, Mr. Perlmutter and/or Attorney Kurland "to pay Telebrands its attorneys' fees incurred in connection with this Motion"; and (3) "impose any other remedy the Court deems just and proper, including but not limited to imprisonment in the event that contemnors fail to make any ordered payment."  *Id.* at 7. [3]

In opposition, Defendant argues that a "plain reading of" the Order "reveals that the Order . . . deployed the complaint-demanded patent infringement remedy covering the allegedly infringing products only" and "simply did not enjoin the $21,000 sale of a trademark portfolio made for the purpose of paying off attorneys' fees."  Dkt. No. 67 at 5 (emphasis omitted).

---

[2]  This information shows that Defendant's representation in its discovery response that it did not conduct any financial transactions after this Court's Memorandum-Decision and Order dated January 15, 2025, was false.  *See* Dkt. No. 66-4 at 9.  Although this revelation is troubling, it is not the subject of the motion presently before the Court.  The fact that an entity formed on January 17, 2025, somehow consummated a transaction January 16, 2025, is also perplexing.

[3]  Buried within Plaintiff's motion papers is a request for expedited resolution.  *See* Dkt. No. 66 at ¶ 33.  The motion was not filed as an emergency motion and, regardless, the record before the Court is devoid of evidence that Defendant intended to secrete or transfer other assets.  Indeed, the parties appear to agree that BHSD Trading is currently assetless.  *See id.* at ¶ 25.

According to Defendant, the Order did not "serve as an all-asset freeze to secure an eventual money judgment" but merely enjoined further patent infringing conduct.  *See id.*[4]

### III. DISCUSSION

**A.      No Hearing Necessary**

"'Ordinarily, a hearing is required before a court may award civil contempt sanctions,' but '[n]o hearing is required . . . where there are no material facts in dispute.'"  *Sulzer Mixpac USA, Inc. v. Shanghai NSJ Hardware Ltd.*, No. 09-CV-9705, 2013 WL 5997707, \*3 (S.D.N.Y. Nov. 13, 2013), *R. & R. adopted*, 2014 WL 793086 (S.D.N.Y. Feb. 25, 2014) (quoting *New York State Nat. Org. for Women v. Terry*, 697 F. Supp. 1324, 1330 n. 6 (S.D.N.Y.1988)).  As the facts relevant to Plaintiffs' contempt motion are largely undisputed and no party sought an evidentiary hearing, the only question for the Court is whether the conduct at issue violated the provisions of the Order.  The Court will decide the present motion on submission.

**B.      Legal Standard**

"'[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt.'"  *Spallone v. United States*, 493 U.S. 265, 276 (1990) (citation omitted).  "The contempt power serves to 'protect[ ] the due and orderly administration of justice and [to] maintain[ ] the authority and dignity of the court.'"  *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

---

[4]  Defendant states that it "takes no position as to [Attorney] Kurland's compliance with the Order."  Dkt. No. 67 at 15 n.6.  Thus, Plaintiff contends that the motion should be granted against Attorney Kurland as unopposed.  *See* Dkt. No. 70 at 13.  However, even where a party does not oppose a motion for contempt, "the Court has the responsibility to ensure that the damages and fine sought . . . are appropriate."  *Sulzer Mixpac USA, Inc. v. Shanghai NSJ Hardware Ltd.*, No. 09-CV-9705, 2013 WL 5997707, \*3 (S.D.N.Y. Nov. 13, 2013), *R. & R. adopted*, 2014 WL 793086 (S.D.N.Y. Feb. 25, 2014).

As the Second Circuit has explained, "a contempt order is a 'potent weapon' . . . that is inappropriate if 'there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" *Latino Officers Ass'n City of N.Y., Inc. v. City of New York.*, 558 F.3d 159, 164 (2d Cir. 2009) (citations omitted). "'A contempt order is warranted only where *the moving party* establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict.'" *Id.* (citation omitted) (emphasis in original). Therefore, a court may hold a party in contempt if the movant establishes that "(1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *CBS Broad. Inc.*, 814 F.3d at 98 (citing *Paramedics Electromedicina Comercial, Ltd. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)). If a movant fails to establish any of these three factors, a contempt motion cannot be granted. *See Latino Officers Ass'n*, 558 F.3d at 165 n.4 ("Because plaintiffs have failed to establish the second . . . factor, . . . we do not reach the other . . . factors") (internal citation omitted).

As to the first factor, "[a] clear and unambiguous order is one that leaves 'no uncertainty in the minds of those to whom it is addressed[.]'" *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (citation omitted). "The proper measure of clarity, however, is not whether the decree is clear in some general sense, but whether it unambiguously proscribes the challenged conduct." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 292 (2d Cir. 2008) (citation omitted). "'[T]he longstanding, salutary rule in contempt cases is that ambiguities and omissions in orders redound to the benefit of the person charged with contempt.'" *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 143 (2d Cir. 2014) (citation omitted). "Thus, unless the parties can ascertain from the four

corners of the order precisely what acts are forbidden, the order cannot form the basis for contempt." *Id.* (quoting *King*, 65 F.3d at 1058) (internal quotation marks omitted).

**C.    The Order Did Not Proscribe The Trademarks Sale**

The Court has examined the four corners of the Order to determine what conduct the Court intended to enjoin. *See United States v. Acquest Wehrle LLC*, No. 09-CV-637, 2010 WL 3788050, \*3 (W.D.N.Y. Sept. 23, 2010) ("Court orders are construed like other written instruments, except that the determining factor is not the intent of the parties, but that of the issuing court . . . .  Further, court orders must ordinarily be interpreted by examination of only the four corners of the document") (quoting *United States v. Spallone*, 399 F.3d 415, 424 (2d Cir. 2005)) (internal citation, quotation marks, and alterations omitted).

The Order states that the Court found Plaintiff was "entitled to the permanent injunctive relief, *as requested in its motion*[,]" and, therefore, the Court enjoined and restrained, *inter alia*, Defendant, its owners, and its attorneys "from engaging in the conduct underlying this action." Dkt. No. 48 at 6-7 (emphasis added).  Although the Order prohibited "secreting, concealing, destroying, selling off, transferring, or otherwise disposing of" certain assets, the Court carefully limited this proscription to "any assets or other financial accounts *subject to this Order*."  *Id.* at 7 (emphasis added).  The Order does not state on its face that the parties subject thereto could not transfer or sell any assets in Defendant's possession.  Thus, the Court finds that the intent of the Order was clear: to enjoin Defendant and other parties from further engaging in the infringing conduct described in the complaint.

Plaintiff essentially asks the Court to interpret the Order as an "asset freeze order."  *See* Dkt. No. 66-4 at 13.  However, the Order uses no such terms and relief to that effect was not requested.  Indeed, court orders that have been interpreted as prohibiting the sale/transfer of

8

certain assets or freezing a party's accounts differ significantly from the express terms of the Order.  For example, in *Gilead Sciences*, a case Plaintiff cites, *see id.*, the court issued a so-called "asset freeze order" which "prohibited defendants from, among other things, selling 'any ownership or other legal interest they may have in any real property.'"  *Gilead Scis., Inc. v. Safe Chain Sols., LLC*, 753 F. Supp. 3d 173, 177-78 (E.D.N.Y. 2024).  On its face, the Order does not freeze Defendant's assets.

Other cases cited by Plaintiff and Defendant similarly underscore the difference between the Order and orders that contain explicit prohibitions on asset transfers.  *See* Dkt. No. 67 at 14 n.5 (citing *Close-Up Int'l, Inc. v. Berov*, 474 Fed. Appx. 790, 793-94 (2d Cir. 2012) (summary order); *New Falls Corp. v. Soni Holdings, LLC*, No. 2:19-CV-449, 2021 WL 919110, *1, *8 (E.D.N.Y. Mar. 8, 2021)); Dkt. No. 66 at 11-12.  In *Berov*, the Second Circuit affirmed a district court's finding of contempt of orders that prohibited the defendant from, *inter alia*, "sell[ing] his real property for anything less than fair market value or . . . plac[ing] any other mortgages or encumbrances on his properties[.]"  *Berov*, 474 Fed. Appx. at 793-94.  And in *New Falls*, the order at issue barred certain defendants from, *inter alia*, "liening, encumbering, or otherwise disposing of the [d]efendants' ownership in the premises located at 632-634 MLK Jr. Boulevard, Newark, New Jersey 07102." *New Falls Corp.*, 2021 WL 919110, at *9 (citation and internal quotation marks omitted).  In finding contempt, the court in *New Falls* explained that this language was clear and unambiguous because it "'explicitly tells defendant what it must do to comply with the order and by when[.]'"  *Id.* (quoting *Ferrara v. Metro D Excavation & Found., Inc.*, No. 10-CV-4215, 2012 WL 6962214, *3 (E.D.N.Y. Nov. 30, 2012), *R. & R. adopted*, 2013 WL 357818 (E.D.N.Y. Jan. 29, 2013)).  Here, the terms of the Order do not clearly and

unambiguously tell Defendant that it was enjoined from selling any and all assets in its possession.

After careful consideration, the Court finds that the Order did not prohibit the trademarks sale. The Court cannot hold Defendant, Mr. Perlmutter, or Attorney Kurland in contempt for actions that did not violate the terms of the Order.

## D.    In Any Event, Plainitff Has Not Met Its Burden

Even if the Order was intended to enjoin the transfer or disposal of any of Defendant's assets, the Court finds that Plaintiff has failed to demonstrate that the Order "unambiguously proscribe[d]," *Chao*, 514 F.3d at 292, the trademarks sale. The Order is ambiguous in this regard because it is unclear what assets are specifically enjoined. This purported ambiguity alone would bar a contempt finding against Defendant, Mr. Perlmutter, or Attorney Kurland. *See Scipar, Inc. v. Simses*, 354 Fed. Appx. 560, 563 n.2 (2d Cir. 2009) (summary order) ("It is well-established that to be held in civil contempt for failure to comply with an order, the order must be 'clear and unambiguous.' . . . Here, the very need to define the term 'property' indicates that the . . . injunction did not satisfy that standard") (internal citation omitted).

Indeed, an examination of the record suggests that the scope of the Order was limited to preventing further violations of Plaintiff's patents. In fashioning the Order, the Court adopted part of a proposed order submitted by Plaintiff. *See* Dkt. No. 17-5. Plaintiff's proposed order described the injunctive relief it sought as "a permanent injunction order prohibiting Defendant from infringing Telebrands' patents." *Id.* at 1. And, in its memorandum of law in support of its motion for default judgment, Plaintiff set forth its arguments as why an injunction prohibiting Defendant from further infringement was necessary. *See* Dkt. No. 17-1 at 17-20. Plaintiff did not

explicitly seek an injunction that froze Defendant's assets and provided no justification for the Court to so-order.

Moreover, at the damages phase of default judgment, the Court rejected Plaintiff's attempt to achieve judgement-related remedies that were not sought in the complaint. As the Court noted in its Memorandum-Decision and Order dated January 15, 2025, "Plaintiff did not request attachment (or any similar judgment-related remedy) in the complaint." Dkt. No. 48 at 17. The Court continued as follows:

> When a district court grants default judgment, such judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). As the Second Circuit has noted, "'[i]t would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.'" *Silge v. Merz*, 510 F.3d 157, 159 (2d Cir. 2007) (quoting 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure, § 2663 (1998)).

*Id.* This subsequent ruling, although not directly dispositive of an interpretation of the Order, is helpful in divining the Court's intent regarding the scope of the Order.

In sum, based upon the allegations in the complaint and the relief requested by Plaintiff at default judgment, it would be reasonable to interpret the Order as merely an injunction barring future infringement, the transfer of any infringing products, or the disgorgement of profits derived therefrom. The trademarks sale was not clearly and unambiguously within the scope of the Order. Interpreting any ambiguities in Defendants' favor, as the Court must, *see Gucci Am., Inc.*, 768 F.3d at 143, the Court cannot find Defendant, Mr. Perlmutter, or Attorney Kurland in contempt.

11

**E.      A Word of Warning**

Nothing herein should be read as the Court's approval of what occurred.  Although the conduct at issue did not violate the terms of the Order, the Court is deeply troubled by the actions of Defendant, Mr. Perlmutter and Attorney Kurland.  It appears that, in the wake of the Memorandum-Decision and Order dated January 15, 2025, these parties acted quickly to bleed BHSD Trading dry before Plaintiff could collect on the judgment.  This conduct may not have been in contempt of the Order, but it was dubious.  Defendant, Mr. Perlmutter, and Attorney Kurland have flown dangerously close to the sun.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for contempt (Dkt. No. 66) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 20, 2026
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

12